WILLIAM CLOKE *et al. v.* MARTIN SHAFROTH,

and

WILLIAM CLOKE *et al. v.* SAMUEL DOWSE.

*Filed at Springfield May 11, 1891.*

1. WAREHOUSEMAN—*warehouse burned—liability.* Where a ware-
houseman ships corn brought to him for storage, with the consent of
the owner, agreeing to give to the latter a like quantity of corn in his
elevator, when, in fact, he has no corn in there belonging to him, but
expects to get corn enough by purchase to enable him to make good
his contract, and the grain in his elevator is burned accidentally before
he supplies the deficiency by purchase, such warehouseman will be
liable to the owner of the corn so shipped, on a count for money had
and received.

2. A party brought one thousand bushels of shelled corn to a ware-
houseman for storage, but the engine being out of order, it was un-
loaded in cars and shipped, under an agreement that the warehouseman
would keep in store for the owner a like quantity and grade of corn.
The latter had no corn in store that was his own, and his warehouse
was burned without his fault: *Held,* that he was liable to the owner
whose corn was so shipped, as the latter had no corn that was destroyed,
and was, therefore, not subject to any loss by the fire.

3. Same—*when purchaser—conversion of part is a conversion of all.* Where it is the custom of a warehouseman to ship grain stored with him whenever he thinks the market price is best and it is to his advantage, and pay the owner the market price on whatever day a settlement is demanded by him, and the warehouseman makes advances on grain stored with him, and ships out and disposes of grain until there is not enough left to make up the grain due to depositors, the warehouseman may be held liable, as purchaser of the grain, for the market value, when called on. An owner of corn thus stored is not bound to receive a part · thereof, but may treat the conversion of a part of his grain as a conversion or sale of it all, and recover for the same of the warehouseman.

4. Same—*power of sale—loss by fire.* A warehouseman having in store corn belonging to others, being a mere bailee, has no power to transfer it, or any part thereof, to another in exchange for other grain of the latter, which he ships to market, so that in case of destruction by fire the loss shall fall on the person to whom he attempts to transfer the grain.

5. Sale—*when complete—as to part of a mass.* It seems that the weight of the American authorities is, that when the sale or exchange· is part of a mass of the same kind, quality and grade, as, of part of the corn or wheat in an elevator, separation from the mass, or other specification of the particular part sold, is unnecessary to its appropriation, independent of the statute vesting the ownership in the holder of a warehouse receipt.

6. Contract of sale—*executory.* It is an elementary principle, of general application alike to sales and exchanges of property, that the contract is executed only by the appropriation of the specific goods or chattels to the contract. Until this is done the contract remains executory, and no title passes. ·

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Ford county; the Hon. Alfred Sample, Judge, presiding.

Mr. C. H. Payson, for the appellants:

On a deposit of grain in a public warehouse, to be mixed with that of other persons, under the Warehouse act the depositor becomes the owner of an equal quantity of grain of the same kind and quality as that deposited. *Nat. Bank* v. *Langan,* 28 Ill. App. 401.

Being bailees of the corn, we are liable only for what we shipped out before the fire, and for any shortage, and not as

purchasers of the whole amount deposited by the appellees. The loss of the grain destroyed should fall on the depositors.

If we were bailees the corn was considered by the trial court upon a vitally erroneous theory. From the testimony there was no sale. The action is misconceived. *Seckel* v. *Scott*, 66 Ill. 106; *Burnham* v. *Roberts*, 70 id. 19; *Trustees* v. *Shaffer*, 63 id. 243; *Johnston* v. *Salisbury*, 61 id. 316.

Under the declaration we could not fairly suppose, nor reasonably anticipate, that the question of how much corn was actually destroyed would be made upon trial. They were suing for goods sold and delivered. When we showed that it was a bailment and not a sale, judgment should have been given for us.

Messrs. COOK & MOFFETT, for the appellees:

It is not considered that there was a bailment in this case. Where there is no obligation to restore the specific article, the receiver is at liberty to pay the price for the article on demand,—it is considered in law a sale. The following authorities support this view: *Richardson* v. *Olmstead*, 74 Ill. 213; *Lonergan* v. *Stewart*, 55 id. 45; *McEwen* v. *Morey*, 60 id. 32; *First Nat. Bank* v. *Schween*, 127 id. 573; *Dastress* v. *Chickering*, 18 Bradw. 207; *Grier* v. *Stout*, 2 id. 606.

If this, and similar transactions in appellants' business, does not constitute a sale, then they are criminally liable, since, if they shipped and sold stored grain, it is a violation of the Criminal Code. We must suppose that they complied with the law, and that it was a sale. In support of these propositions we cite *Ives* v. *Hartley*, 51 Ill. 520; *Hardworth* v. *Oswood,* 23 Ill. App. 282; *Richardson* v. *Olmstead*, 74 Ill. 213; *Lonergan* v. *Stewart*, 55 id. 44; *McEwen* v. *Morey*, 60 id. 32; *Grier* v. *Stout*, 2 Bradw. 603.

As to custom, see *Bailey* v. *Bensley*, 87 Ill. 556; *Oldershaw* v. *Knoles*, 4 Bradw. 63; *Mida* v. *Giessman*, 17 Ill. App. 207; *Lyon* v. *Culbertson*, 83 Ill. 33.

As to criminal liability for removing stored grain, see Starr & Curtis' Stat. chap. 38, secs. 170, 171; *Hanchett* v. *First Nat. Bank*, 25 Ill. App. 274.

If the corn had been stored and was sold by appellants, we were entitled to recover. We had a right to waive the trespass and recover for the money had and received. *Staat* v. *Evans*, 35 Ill. 455; *Ives* v. *Hartley*, 51 id. 520; *Creel* v. *Kirkman*, 47 id. 344; *McDonald* v. *Brown*, 16 id. 32; *DeClerq* v. *Mungin*, 46 id. 112.

The action is for money had and received, in which action, if the plaintiff shows that the defendant has received money belonging to the plaintiff, which *ex equo et bono* he ought not to retain, the plaintiff must recover. *Alderson* v. *Ennor*, 45 Ill. 128; *Taylor* v. *Taylor*, 20 id. 650.

The rule is well settled that a party whose property has been taken from him tortiously, or unlawfully detained from him, whereby an action of trespass or trover has accrued, may, if the wrongdoer sells the property and receives the money, waive the tort, affirm the sale, and sue in assumpsit for the price actually received. *DeClerq* v. *Mungin, supra; McDonald* v. *Brown, supra.*

Mr. JUSTICE SHOPE delivered the opinion of the Court:

These two cases may, to save repetition of statement, be considered in one opinion. Both were assumpit, in the Ford circuit court. In the first, the *Shafroth case,* the declaration contained the common money counts, and also that the defendants bargained for and bought of the plaintiff 3000 bushels of corn, at twenty-eight cents per bushel, to be delivered, etc., within a reasonable time, and a failure to deliver after reasonable demand, etc.; and also that plaintiff, at the request of complainant, delivered to defendants 1200 bushels of corn, and in consideration thereof the defendants promised plaintiff to return to him a like quantity and quality of corn as that

delivered, upon demand, etc. The general issue was filed, and trial had by the court, resulting in a finding and judgment for plaintiff. In the *Dowse case* the declaration contained the common counts for goods sold, for money had and received, and a count for corn sold, to be delivered within a reasonable time, to be paid for on delivery, and although delivered defendants refused to pay, etc. General issue was filed, jury waived, and trial by the court, resulting in a finding and judgment for plaintiff. Propositions were submitted in each case, properly raising the questions determined. On appeal these judgments were severally affirmed by the Appellate Court, and defendants below prosecute appeals.

Appellants were warehousemen and dealers in grain at Kemper, Illinois. Their warehouse was in the class designated "Class B," which, with its contents, was destroyed by fire October 1, 1889, without their fault. There is some conflict in the evidence as to the amount of corn in store at the time of the fire, the amount testified to varying from 1500 to 3200 bushels of shelled corn in the warehouse, besides about 1500 bushels of corn in the ear, in cribs, also destroyed. There had been delivered into the warehouse for storage, by various parties,—counting the Shafroth corn as so delivered,—5100 bushels of shelled corn, for which, at the time of the fire, the liability to account was outstanding. The following rules were introduced in evidence, and it was admitted they had been posted in appellants' office at the warehouse over a year, and were matter "of public observance:"

"In the absence of other agreements, grain left in this elevator will be settled for at the market price for said grain on the day of delivery. Grain left for storage will be subject to the following: All grain in good condition may be stored thirty days free of charge, and thereafter for one cent per bushel for fractional thirty days from five to fifteen; over that number of days, and under thirty, one cent,—*all subject to owners' risk.*

"When stored grain is sold to other parties, or taken out of storage, storage charges will begin on day of receipt, and one cent in addition thereto will be charged for handling same. Grass seed and millet will only be received for storage on special agreement. We reserve the right to inspect all grain presented for storage, and to place therewith other grain of same grade and quality."

It was also shown by appellants, by a number of witnesses, that it was customary and usual for grain dealers running and operating warehouses of the kind in question and of the class in question, to ship out of their warehouses, indiscriminately, grain belonging to themselves or grain left with them in store; that the state of the market at the time of the shipment determined the question as to whether or not it was advisable to sell corn or grain in the house in store; that if the state of the market was such that the warehouseman believed it would be advantageous to use the corn left in store as his own, and ship it and use the proceeds of the shipment, it was customary to so use it, expecting to settle with the parties who stored the corn at whatever the market price might be when a settlement was demanded by the storer.

It appears in the *Shafroth case,* that on the 26th day of September,—four days before the fire,—a son of appellee made inquiries of appellants in respect of storing the corn of his father, and was told they would store it. Appellee's corn was shelled, and 1010 bushels delivered on Saturday, the 28th of September. When he began hauling it appears that the engine was out of order, so that the corn could not be elevated, and the agent of appellee, who delivered the corn, was told by appellants that he would have to shovel it into cars standing on the Illinois Central railroad tracks, to which he consented, and all of appellee's corn was delivered aboard said cars. One of appellants testifies that he told the agent that they (appellants) would keep corn in the warehouse to replace the corn loaded into the cars for appellee. Before the fire appellee's

corn was shipped by appellants to Chicago, and sold, they receiving the proceeds. No warehouse receipt was given for appellee's corn, or for a like amount in the warehouse.

It is insisted that appellants are not liable to appellee, Shafroth, for the reason that, in effect, his corn was stored in their warehouse; that by the arrangement a like quantity of the same quality and grade of corn therein as that shipped became the property of appellee; that they were bailees only, and the destruction of the corn having occurred without fault on their part, the loss must fall upon appellee,—or, at most, if there was not enough corn in the warehouse to meet the liability of appellants to all who had grain therein, they would be liable to appellee for a *pro rata* share of the deficiency, only. In this we do not concur. It is an elementary principle, of general application alike to sales and exchanges with property, that the contract is executed only by the appropriation of the specific goods or chattels to the contract. Until this is done the contract remains executory, and no title passes. It is, however, held, by what is probably the weight of modern American decisions, that where the sale or exchange is part of a mass, of the same kind, quality and grade, as, of part of the corn or wheat in an elevator, separation from the mass, or other specification of the particular part sold, is unnecessary to its appropriation, independent of the statute vesting the ownership in the holder of a warehouse receipt. 1 Benjamin on Sales, sec. 469, *et seq.*, and cases cited.

But if this doctrine should be held, and applied to this case, it could not avail appellants. It is manifest that appellants had no corn in their warehouse, the ownership of which could have passed to appellee. The effect of the arrangement, if made as they contend, was, that they would keep in store for appellee 1010 bushels of corn of like grade and quality as that delivered by him. At no time before the fire, after the delivery of appellee's corn, had they that amount, or any amount, of corn in their warehouse that could be appropriated to ap-

pellee. As we have seen, there was, at most, 3200 bushels in store, and that unquestionably belonged, if appellants' statements be true, to persons who had stored corn in their warehouse to the amount of 4100 bushels. To have added Shafroth's corn would have created a shortage of practically 2000 bushels, accepting their own version of the amount in store. On the other hand, if the evidence of appellee's witnesses is to be taken, there was only about 1500 bushels in store, making a shortage of about 2600 bushels, or, if Shafroth's be added, of 3600 bushels. The corn was the property of the persons who had stored it, and it was not in the power of appellants, who were mere bailees thereof, to transfer it, or any part of it, to appellee. Undoubtedly, as explained by appellants to have been their custom, they relied upon buying in other corn to be kept in store for appellee, but before they did so the fire came. We are of opinion that they were clearly liable upon the count for money had and received, and that the judgment of the Appellate Court affirming the judgment in favor of appellee, Shafroth, must be affirmed.

In the other case, of the same appellants against Dowse, the facts peculiar to that case are, that on September 7, 1889, appellee delivered to appellants 2232 bushels of shelled corn, which was elevated into their warehouse. On the day of its delivery appellants advanced to appellee $30, and a few days later accepted an order for $50, and subsequently gave him $20, making $100 in all. No warehouse receipt was given. The parties disagree in respect of what was said at the time of the delivery of the corn, and as to whether the money before mentioned was a payment upon the corn, or simply an advance to appellee. It appears that appellee was desirous of hauling his corn to the elevator, but was unwilling to take the price at which it was then selling. Appellants had room in their warehouse, and consented to his putting it there, saying to him, he could keep it there for thirty days without charge. It seems nothing was said about selling the corn, at

that time. As before seen, there was, at the time of the fire, a shortage in the amount of corn in the elevator to meet the liability of appellants to persons who had stored corn therein. It is conceded that, acting under the custom before mentioned, appellants had shipped out the corn, selling it as their own and receiving the proceeds. It is now claimed that appellants were bailees, merely, of appellee's corn, and that the loss must be borne by appellee. No pretense is made that appellants had not shipped out corn, indiscriminately, from the warehouse, so as to materially reduce the amount of corn in store belonging to appellee and other parties. It is undoubtedly true, if the question arose between appellee and other depositors of grain intermingled in the warehouse, that each should be required, as between themselves, to accept his *pro rata* share. But that question does not arise in this case. By their voluntary shipment and sale from their warehouse, appellants materially reduced the amount in store belonging to appellee, which they could not have rightfully done if the corn belonged to appellee and they were bailees, merely. By the custom proved, they had the right, if they saw proper, to use the corn left in store as their own, and ship it, and use the proceeds thereof as their own, expecting to settle with the parties who stored the corn, at whatever the market price might be when settlement was demanded by the storer. By assuming to treat the corn as their own, they gave a construction to the transaction wholly inconsistent with the theory that the grain remained the property of appellee.

Although nothing was said in respect of selling the corn at the time it was put into the warehouse, no one can, we think, read the evidence and escape the conclusion that it was understood by both parties to be a sale of the corn by appellee to appellants, to be paid for at the market price, upon some day in the future when appellee should demand payment. One of appellants testifies, (quoting from the abstract furnished by their counsel:) "It was our custom to ship out corn indis-

criminately, according to the market, if we deemed best. If they (customers) delivered corn there, they had a right to call for the money at any time within thirty days, without charge. It was the universal custom to sell to us. * * * We took our chances on the rise and fall of the market." The other says that appellee was not then satisfied with the price, but thought it would go higher, and wanted to wait until the middle of the month. He further says: "I understood that he had a right to take the price when it suited him. That was all that remained to be done. It was for him to set the price and take the money."

If, however, the corn was in fact stored by appellee with appellants, it is apparent that, acting under the custom proved, the legality of which need not here be discussed, appellants shipped out, as before said, at least a portion of the corn so stored. If appellee understood appellants' mode of business, and is chargeable with notice of the custom under which they claim to act, upon the appropriation of his corn by appellants as their own he had the right of election to treat it as a sale and demand the money therefor of appellants. It is conceded that he could have done this any day before the fire and the destruction of the corn in the warehouse, but having failed to make his election, it is said, the corn remained his, and he must bear the loss. In this we can not concur. Acting under the custom, appellants might exercise the right to determine that they would appropriate the corn to their own use, holding themselves responsible to appellee for the market price upon the day when he demanded settlement. This the evidence shows they did. Appellee was not bound to receive corn in the ear, or other corn not of like quality and grade with that delivered, nor a less quantity than he delivered, and might treat the conversion of a part as an election on the part of appellants to take the whole, under the custom proved. And if the custom was valid, and it can not be questioned by appellants, they will be bound to settle with appellee for the

corn stored at the price upon the day when settlement was demanded.

We are of opinion that the title to the corn delivered by appellee passed to appellants, and that they were liable to account to appellee therefor, and that recovery may be had as for goods sold and delivered. *McDonald* v. *Brown*, 16 Ill. 32; *DeClerq* v. *Mungin*, 46 id. 112.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*