## Somers, Jones & Company, Appellant, v. Charles A. Inkster et al., Appellees.

1. WAREHOUSEMEN, § 21*—*when removal of goods will be enjoined.* Complainant in a bill to restrain the defendant owner of a warehouse, and others who claimed ownership, from removing oats represented by certificates given by the warehouse owner to complainants, was entitled to the relief sought, where the facts established that the oats were not deposited by the defendants other than the warehouse owner, under storage contracts, but that the deliveries were made at a sale of the oats, to be paid for at the market price upon some day in the future when appellees should demand payment.

2. WAREHOUSEMEN, § 19*—*what is effect of failure to receive receipts for goods.* Although the failure of parties depositing oats in a warehouse, to obtain receipts, was not necessarily essential to establish a bailment of such oats as against a bona fide purchaser for value from the warehouse owner, yet in the absence thereof the facts which such a receipt would establish were required to be proven by a preponderance of other evidence; and where the oats in question had been so deposited with the knowledge that it was to be mixed with other grains and shipped out and sold, the unsupported testimony of the depositors that the transaction was a bailment and not a sale, when every other creditable fact in evidence tended to show that it was a sale, did not constitute such preponderance of evidence.

Appeal from the Circuit Court of Ford county; the Hon. T. M. HARRIS, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded with directions. Opinion filed October 27, 1920.

SCHNEIDER & SCHNEIDER, for appellant; EDWIN H. CASSELS and BARRY GILBERT, of counsel.

PHILLIPS & MIDDLETON and CLOUD & THOMPSON, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Somers, Jones & Company, appellant, is a corpora-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tion engaged in the business of buying and selling grain in the City of Chicago. In July, 1917, James Inkster and John Inkster, under the firm name of Inkster Brothers, were engaged in the business of buying and selling grain and had an elevator or warehouse in the Village of Melvin, Illinois, and also elevators in a number of other places in that vicinity, and Charles A. Inkster was the manager of the firm's elevator at Melvin. Subsequently, on February 12, 1918, Charles A. Inkster purchased the elevator and business of the Inkster Brothers at Melvin. During the month of July, 1917, an agreement was entered into between appellant and the firm of Inkster Brothers whereby appellant was to advance to the latter $10,000 on which to do business to be paid by drafts drawn on appellant by the firm as the money was needed, and, in consideration thereof, the firm was to ship out grain to the complainant from its various warehouses. Under this arrangement, drafts were paid by appellant which had been drawn on it by the firm until on the 19th day of November, 1917, appellant had advanced over $17,000. On that day Inkster Brothers executed and delivered to appellant five collateral certificates, each of which certified that in the firm's elevator at Melvin there had been unloaded 5,000 bushels of oats which were then in said elevator and that the same were not to be loaded out except upon the surrender of said certificate for cancellation. On November 24, 1917, Inkster Brothers, through Charles A. Inkster, delivered certain policies of insurance covering said oats aggregating about $14,000, and a clause was attached to each policy making the loss, if any, payable to appellant as its interest might appear. During the summer and fall of 1917, the following persons, who are appellees here, delivered to said elevator at Melvin the respective quantities of oats as follows: Sarah J. Phillips, 2,113 bushels and

15 pounds; George Foster, 891 bushels and 22 pounds; Richard Folkern, 108ᵠ bushels; Ida Spellmeyer, 2,295 bushels; and Albert Buchholz, 837 bushels and 15 pounds. On Januar₃ 18, 1918, appellant sent a man by the name of Witter to Melvin to endeavor to get the oats embraced in the collateral certificates shipped to appel ant. The above-named appellees who had delivered the oats mentioned to the elevator appointed Al. Phillips, husband of appellee Sarah J. Phillips, to look after their interests in the oats which they had delivered to the elevator. Phillips endeavored to prevent the shipment of any of the oats in the elevator to appellant, and thereupon, appellant on April 23, 1918, brought this suit in the circuit court of Ford county to restrain the Inksters, and the other appellees hereinabove mentioned, including said Al. Phillips, from interfering in any way with the possession or removal of the oats claimed by the appellant and contained in the warehouse of Inkster Brothers at Melvin. A temporary injunction was issued and appellant shipped the oats in question from the warehouse. Afterwards appellees Spellmeyer, Phillips, Foster, Folkern and Buchholz filed an answer to the original bill and also a cross-bill alleging therein ownership of the oats delivered by them in themselves and a deposit of the same by them as bailors at the Inkster Brothers warehouse and demanding an accounting. The master in chancery to whom the cause was referred heard the testimony and made a report in favor of the last-named appellees as to a total of 7,224 bushels and 52 pounds of oats. The chancellor sustained the master's report and entered a decree requiring appellant to pay the respective appellees the value of the oats deposited by each respectively, less the pro rata share of each of the taxes for the year of 1918 which had been paid by appellant upon the oats in question.

The master and the chancellor found that each of

the appellees who had deposited oats in the warehouse had made an agreement with the said Inkster Brothers at the time they were so deposited by each respectively to store his or her oats in said warehouse for a compensation of one-half cent per bushel which said oats were to be mixed with the oats of other people, and that the elevator in which said oats were stored was a warehouse of Class "B" under the statute and was operated as such when said oats were stored therein.

Section 1 of article XIII of the Constitution provides: "All elevators or storehouses where grain or other property is stored for a compensation, whether the property be kept separate or not, are declared to be public warehouses."

Section 2 of the Act of 1871 in regard to warehouse (paragraph 135, ch. 114, Hurd's Rev. St., J. & A. ¶ 8966) provides as follows: "Public warehouses of Class A shall embrace all warehouses, elevators and granaries in which grain is stored in bulk, and in which the grain of different owners is mixed together, or in which grain is stored in such a manner that the identity of different lots or parcels cannot be accurately preserved, such warehouses, elevators or granaries being located in cities having not less than 100,000 inhabitants. Public warehouses of Class B shall embrace all other warehouses, elevators or granaries in which grain is stored in bulk, and in which the grain of different owners is mixed together."

If the appellees above named deposited their oats in the elevator under agreements for storage for compensation, as found by the master and chancellor, then the elevator unquestionably, in so far as the issues in this case are involved, was a public warehouse under Class "B" and the decree in finding that the ownership of the oats so deposited by said appellees remained in the latter as bailors is correct. The controlling question in this case is, therefore, have said appellees proven the allegations in their cross-bill by

a preponderance of the evidence? Each appellee who testified stated that his or her agreements in regard to the storage of the oats was made with Charles Inkster, who was the manager of the warehouse at that time. Buchholz did not testify at all, neither did Sarah Phillips, but Al. Phillips, her husband, testified that he made the contract of storage as her agent. Each contract of storage, if made, was made by the respective parties separately, and the testimony of each appellee who testified is corroborated by no other witness, fact or circumstance except by the testimony of Charles Inkster. The testimony of this last-named witness in regard to said storage contracts is completely discredited by the clear and manifest weight of the evidence. On November 23, 1917, Charles Inkster, on behalf of Inkster Brothers, wrote to appellant a letter in which he said: "We wish to state that these oats are clear of any claims outside of your own and we will load these oats out and send B-L's to you just as soon as possible." On November 24, he delivered on behalf of Inkster Brothers the policies of insurance on these oats heretofore mentioned. On November 27, at the request of appellant, he posted notices on the bins in the elevator in which the oats were stored reading: "Notice. Contents of this bin are the property of Somers, Jones & Company, of Chicago, Illinois. Do not disturb under penalty of the Law." On February 1, 1918, appellees demanded of him storage receipts and he executed and delivered the same to each of them. On February 21, 1918, in talking with one of the officers of appellant in regard to these storage receipts, he stated that he had charged no storage for the oats, that he had given appellees said storage receipts because they wanted them and that their claims were ridiculous, that his agreement was merely that the price for the oats was to be settled at some future date, and that if he charged stor-

age, he would have to file a schedule with the Public Utilities Commission. These facts are wholly inconsistent with his testimony before the master that the oats in question were deposited in the warehouse under contracts for storage at a compensation of one-half cent per bushel. His testimony on this question is entitled to no weight or corroborative force. The remaining proofs to sustain the fact that the oats in question were deposited in the warehouse by said respective appellees as bailors under contracts of storage consist wholly of the unsupported testimony of the appellees themselves. Every other undisputed fact in evidence tends to show that the oats were not deposited in the warehouse under storage contracts. None of these appellees demanded or received storage certificates until 5 months after the oats had been delivered to the warehouse and after this controversy had arisen. While a failure to take such receipts might not be conclusive evidence that the oats were not deposited under an agreement for storage, yet it is not usual or customary to deposit large quantities of grain in public warehouses without procuring any receipt or acknowledgment of the amount, kind, quality thereof or rate of storage thereon, and the fact that no such receipts were demanded is to be considered with all the other facts and circumstances in evidence. No entry was made upon the books of Inkster Brothers showing that the oats in question were deposited in the warehouse for storage. The assessor in making up his assessment of the personal property in said township interviewed each of appellees and none of them listed their respective portions of the oats in question for taxation, but, after said interviews, the assessor listed all of the oats as the property of appellant and appellant paid the taxes thereon. No storage was, in fact, ever paid by any of said appellees. Over 90,000 bushels of oats were deposited in the elevator that year, none of which were deposited under

storage contracts except those claimed by said appellees. The five collateral certificates delivered to appellant on November 19, 1917, were executed on behalf of Inkster Brothers, by James Inkster. This fact shows that the firm itself, at that time, believed that it owned the oats.

It must be remembered that appellant was a bona fide purchaser of the oats for value without knowledge of the claims of appellees and had reduced the oats to its possession. It must also be remembered that this action is not a suit at law for the replevin of the possession of the oats nor in trover for the conversion thereof, but that the relief here sought by appellees is by a cross-bill in an equitable proceeding and equity takes cognizance of fraud and estoppel. It was incumbent upon appellees to prove that the oats in question were deposited by them under contracts of bailment by a preponderance of the evidence and this, in our opinion, they have failed to do. Appellees knew and understood that the oats deposited by them would be mingled with the oats of other people and would be shipped out and sold by Inkster Brothers. In the case of *Cloke v. Dowse,* 137 Ill. 393, the appellee in that case delivered to the appellant's warehouse a certain quantity of shelled corn and thereafter appellant paid to the appellee in several different payments a total of $100. In the opinion it is stated: "No warehouse receipt was given. The parties disagreed in respect to what was said at the time of the delivery of the corn, and as to whether the money before mentioned was a payment upon the corn, or simply an advance to appellee. It appears that appellee was desirous of hauling his corn to the elevator, but was unwilling to take the price at which it was then selling. Appellants had room in their warehouse, and consented to his putting it there, saying to him, he could keep it there 30 days without charge. It seems nothing was said about selling the corn at that time.  *  *  *  Al-

though nothing was said in respect to selling the corn at the time it was put into the warehouse, no one can, we think, read the evidence and escape the conclusion that it was understood by both parties to be a sale of the corn by appellee to appellants, to be paid for at the market price, upon some day in the future when appellee should demand payment.'' In the Dowse case, the corn was destroyed by fire and the appellee had brought suit against the owner-of the warehouse to recover the value thereof on the ground that the contract was one of sale. The defense was that the corn was simply stored in the warehouse and the contract was one of bailment and the same having been destroyed by fire without fault on the part of the appellant, the appellee could not recover. In that case, as here, no warehouse receipt was given. In that case neither party said anything about a sale of the corn and the only agreement made was that the appellant would store the grain for 30 days without charge, yet the court held that these facts constituted a sale of the corn.

We say in this case, as was said in the Dowse case, that no one can read the evidence and escape the conclusion that it was understood by Inkster Brothers and these appellees that the oats in question were delivered by the latter to the former as a sale thereof to be paid for at the market price upon some day in the future when appellees should demand payment.

As before stated, the failure to obtain a warehouse receipt showing the nature of the transaction, while not necessarily essential to establish a bailment of grain deposited in a warehouse, yet, in the absence thereof, the facts, which such a receipt would establish, must be proven by a preponderance of other evidence, and when grain has been deposited in a warehouse with the knowledge that it is to be mixed with other grain and shipped out and sold and no receipt or memorandum is taken to show the nature of the

transaction, the unsupported testimony of the depositor that the transaction was a bailment and not a sale, when every other creditable fact in evidence tends to show that it was a sale, will not constitute a preponderance of the evidence that the transaction was a bailment when the grain in question has passed into the possession of a bona fide purchaser for value.

Appellees also contend that during the shipment of this grain by appellant an agreement was made between them and appellant's custodian that they were to receive one-third of the proceeds of all the grain shipped. The chancellor apparently did not give much weight to this phase of appellees' contention as the decree is not based upon any such alleged compromised agreement, but wholly upon the facts that the transactions between appellees and Inkster Brothers were bailments and not sales of the oats in question. We have carefully considered the evidence in regard to this latter claim and find that appellant did not make any compromise agreement with appellees, but did attempt to make a new loan to Charles Inkster who, at the time mentioned, had bought out the interests of the firm of Inkster Brothers in the elevator at Melvin and who was then the owner thereof, so that he might settle the claims of appellees and continue to do business, but this transaction was wholly between appellant and Charles Inkster and through the failure of the latter to carry out his agreement with appellant in regard thereto was never wholly consummated.

The decree of the circuit court is reversed and the cause is remanded with directions to dismiss the cross-bill for want of equity and to grant the relief prayed for in the original bill.

*Reversed and remanded with directions.*