## Louis Monjo et al., Appellants, *v.* Samuel H. French et al.

[Marked to be reported.]

*Bailment—Sale—Sheriff's interpleader.*

On a sheriff's interpleader it appeared the goods in dispute had been consigned to a firm of bankers to whom the bill of lading had been sent. Plaintiffs paid the price of the goods to the bankers and directed them to be delivered to defendant in the execution, who gave plaintiffs a receipt acknowledging the goods to be plaintiffs' property, and agreeing to sell the same and pay over the proceeds to plaintiffs. The defendant in the execution was to have a share of the profits. *Held,* that the transaction was a bailment and not a sale of the goods, and that the goods were not subject to be taken in execution as the property of the bailee.

Argued April 5, 1894. Appeal, No. 324, Jan. T., 1894, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., June T., 1892, No. 67, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Sheriff's interpleader. Before GORDON, J.

At the trial it appeared that the goods in controversy were a number of barrels of Portland cement which had been consigned from Stettin, Germany, to H. Marquardt & Co., bankers.

On July 20, 1891, George De Mets suggested that plaintiffs should pay for the goods, and that Erskine W. Fisher should sell them. Plaintiffs agreed to this and sent a check to Marquardt & Co. for the purchase money. The goods were delivered to Fisher, who stored them in his own name. Fisher was to get forty per cent of the profits, plaintiffs forty per cent and De Mets twenty per cent. Fisher gave plaintiffs the following receipt:

"NEW YORK, July 23d, 1891.

"Received from Messrs. Louis Monjo, Jr., & Co., 2,800 (say twenty-eight hundred) barrels Stettin ('anchor brand') Portland cement ex bark 'Lucy and Paul,' at Philadelphia, which. I hereby acknowledge to be their property, with the privilege, on my part, to distribute the same among my customers according to bills rendered (by) Messrs. Louis Monjo, Jr., & Co. to that effect, and I hereby bind myself, my heirs, executors, or

assigns to collect the amount of said bills and to hand over the respective amounts, as fast I receive them, to Messrs. Louis Monjo, Jr., & Co., to the full extinction of the amount of $6,310.25 (say six thousand three hundred and ten dollars and twenty-five cents).

"It is further understood that any excess of the justifiable amount due Messrs. Louis Monjo, Jr., & Co. will be credited to me to the extent of 40 per cent of such excess.

"E. W. FISHER."

The goods were subsequently levied upon as the property of Fisher.

Binding instructions for defendants were given.

Verdict and judgment for defendants.    Plaintiffs appealed.

*Error assigned* was instruction, quoting it.

*Henry C. Brown,* for appellant.—Fisher was merely plaintiff's bailee for sale.   If the sales resulted in a loss, plaintiff, and not Fisher, would have to bear the loss.   If Fisher had been the owner the case would be different.

*H. B. Gill, John R. Read* and *Silas W. Pettit* with him, for appellees.—The arrangement here was a mere device to retain a lien on the property : Jenkins v. Eichelberger, 4 Watts, 121 ; Prichett v. Cook, 62 Pa. 193 ; Thompson v. Paret, 94 Pa. 275 ; Forrest v. Nelson, 108 Pa. 481 ; Euwer v. Van Giesen, 6 W. N. 363 ; Stadtfeld v. Huntsman, 92 Pa. 53 ; Brunswick v. Hoover, 95 Pa. 508 ; Peek v. Heim, 127 Pa. 500 ; Johnson v. Ensign, 18 W. N. 105.

OPINION BY MR. JUSTICE GREEN, July·12, 1894 :

In the opinion we have just filed in the case of Brown Bros. & Co. v. Billington, No. 247, Jan. Term, 1894, [reported above, page 76,] we have expressed at length the reasons why, upon the facts of the case, we regarded the transaction there in question as a bailment and not as a sale.   In the present case the facts are substantially of the same character.   Fisher never had any ownership of the cement, never paid anything for it, was not the consignee and did not have the bill of lading.   The only right he did have to take the cement in charge and to sell

it was derived entirely from the contract with Monjo, who had paid the whole of the purchase money. By that contract he was to act merely as a selling agent for Monjo, and pay the proceeds of the sales to him. It was a bailment for sale only, and in no event was Fisher to become the owner of the cement. Upon these considerations, and for the reasons more fully expressed in the opinion in the case of Brown Bros. v. Billington we determine this contention in the same manner and reverse the judgment of the court below.

Judgment reversed and new venire awarded.