FINCH, ADMINISTRATOR, ET AL. *v.* MCCLELLAN.

[No. 10,671. Filed February 15, 1921. Rehearing denied June 2, 1921. Petition to transfer dismissed February 2, 1922.]

1. APPEAL.—*Review.*—*Harmless Error.*—*Overruling Demurrer to Complaint.*—*Merits Fairly Determined.*—*Statutes.*—Where defendant's death before trial was suggested, and his administrator was substituted as a party defendant in an action on contract, but no supplemental complaint was filed for the original complaint amended so as to make the administrator a party, error, if any, in overruling a demurrer to the complaint as being insufficient for want of facts because the administrator was not made a party, was not ground for reversal, where defendant was not prejudiced by the ruling, since under §350 Burns 1914, §345 R. S. 1881, a cause will not be reversed on appeal for error in overruling a demurrer when it appears from the whole record the merits of the cause have been fairly determined. p. 537.

2. APPEAL.—*Review.*—*Sustaining Demurrer to Answers.*—*Evidence Admissible under General Denial.*—It was not error to

sustain demurrers to paragraphs of answers, which were merely argumentative denials, where all evidence admissible thereunder could have been introduced under the general denial. p. 540.

3. APPEAL.—Review.—Erroneous Admission of Evidence.—Cure by Subsequent Proof.—Error, if any, in admitting the contract sued on without competent proof of its execution was cured by subsequent proof thereof.  p. 540.

4. SALES.—Bailment.—Sale.—Distinction.—The distinction between an obligation to return the specific thing received, or of returning something of equal value, is the distinction between a bailment and a sale.  p. 540.

5. SALES.—Contract.—Construction.—Wheat to be Paid for at Market Price.—A written contract reciting that defendants had received of plaintiff a specified quantity of "wheat (borrowed) and to be paid for on demand at the market price," and stating that a payment of a specified amount on the contract had been made, was a contract of sale, notwithstanding the use of the word "borrowed," which, when taken with the other parts of the contract, means only that defendants were to have the immediate use of the wheat, conclusively indicating a sale.  p. 541.

6. SALES.—Delivery of Wheat.—Payment of Market Price.— Where wheat is delivered to the owner of an elevator under an agreement that he is to have the grain on paying the highest market price, the transaction is a sale and not a bailment. p. 542.

7. BAILMENT.—Elements.—Placing Personal Property in Possession of Another for Specific Purpose.—Title.—A bailment takes place where any article of personal property is put by the owner in the hands of another for a specific purpose, to be returned to the owner or to a third person when the object of the trust is accomplished; there can be no transfer of the right of ownership in a contract of bailment, for where there is such a transfer, the transaction becomes a sale.  p. 542.

8. EVIDENCE.—Admissibility.—Contract of Sale.—Testimony as to Seller's Statements Prior to Execution of Contract.—All prior oral negotiations are merged in a written contract of sale, and, the contract not being ambiguous, testimony offered by defendant buyer as to certain statements concerning the nature of the transaction involved which were made by plaintiff seller before the execution of the contract, is inadmissible in an action thereon.  p. 542.

9. ACTION.—Sale of Wheat.—Payment of Market Price on Demand.—Testimony as to Offer of Buyer after Seller's Election.

Finch, Admr., v. McClellan—77 Ind. App. 533.

—*Competency.*—In an action to recover for wheat sold under a contract providing that it was to be paid for on demand at the market price, and plaintiff seller claimed that on a particular date he had elected to accept the market price from the buyers and on that day had demanded settlement at the market price, which demand was refused, it was proper for the trial court to refuse to permit a witness to testify that one of the defendant buyers, on a day after the date of the seller's election, and after the commencement of the action, had offered to return the wheat to plaintiff seller, or to pay him the market price on such day.  p. 544.

10.   TRIAL.—*Refusal to Direct Verdict.—Waiver of Error.*— Error, if any, in the refusal of the trial court to direct a verdict for defendants at the close of plaintiff's evidence was waived, where defendants introduced their evidence in defense after such refusal.  p. 545.

11.   TRIAL.—*Instructions.—False Testimony as to Material Fact. —Right of Jury to Disregard all of Testimony of Witness.*— An instruction that if the jury believed any witness had willfully testified falsely as to any material fact, it was at liberty to disregard his whole testimony, was properly refused, since the jury may have believed the testimony of a witness where corroborated, and, if so, it had no right to disregard such part of his testimony because believing he had testified falsely as to a certain fact, but had the right to disregard any material part of his testimony as to any material fact where corroboration was lacking.  p. 545.

12.   SALES.—*Action on Written Contract of Sale.—Instructions.* —In an action by a seller of wheat on a contract whereby the buyers agreed to pay for the wheat on demand at the market price, an instruction *held* not erroneous as incorrectly stating the substance of the contract, as incorrectly directing the jury's attention to the market price of the wheat at the time of demand, etc.  p. 545.

13.   WITNESSES.—*Action of Contract of Sale.—Competency of Seller to Testify as to Demand on Deceased Buyer.—Statutes.* —Under §521 Burns 1914, §498 R. S. 1881, in an action on a contract brought by the seller of wheat against the buyers, a partnership, one of the partners dying and his administrator being substituted, testimony of the seller that he had a conversation with the deceased buyer in which he made a demand on him for the market price of the wheat, etc., as provided by the contract, was inadmissible and its admission was reversible error.   (*Dodds* v. *Rogers* [1879], 68 Ind. 110, and *Hess* v. *Lowrey* [1890], 122 Ind. 225, distinguished.)   p. 546.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by Charles McClellan against Samuel N. Finch and another, as partners, wherein the named defendant died before trial and Ira A. Finch, administrator of his estate, was substituted as a party defendant. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Lenn J. Oare,* for appellants.
*Charles P. Drummond,* for appellee.

McMAHAN, J.—This action was commenced by appellee against Samuel N. Finch and Alfred Finch, as partners. Samuel Finch died before trial, and the court ordered that Ira A. Finch, administrator of his estate, be substituted and made a party defendant. Without any amendment being made to the complaint or any supplemental complaint being filed, alleging the death of Samuel N. Finch and the appointment of an administrator of his estate, Ira A. Finch, as administrator, appeared and was ruled to file an answer to the complaint. This rule was discharged by filing a demurrer to the complaint for want of facts, with a memorandum attached thereto specifying that the complaint was not sufficient because the administrator was not made a party defendant. The demurrer was overruled and exception saved.

The first paragraph of the complaint alleged that Samuel and Alfred Finch were partners in the grain business and were doing business under the name of Finch Brothers; that on July 19, 1915, plaintiff and defendants entered into a written contract, reading as follows:

"North Liberty, Indiana, July 19, 1915.
Received of Charles McClellan, Ten Hundred Thirty-Two bushels and 30 pounds No. 2 red wheat

(borrowed) and to be paid for on demand at the market price.

Paid on the above contract $500.

> CHARLES McCLELLAN
> FINCH BROTHERS."

That under the said contract the plaintiff sold and delivered 1032 bushels and thirty pounds of wheat and that the defendants agreed to pay plaintiff the market price for said wheat at the time of demand for such payment; that $500 was paid plaintiff at the time of the execution of said contract and to apply thereon; that the plaintiff on May 16, 1917, demanded payment from the defendants of the balance due for said wheat, the market price being $3.20 per bushel and that defendants refused to pay for said wheat according to the terms of said contract and demanding judgment.

The second paragraph was in substance the same as the first.

Each defendant filed a separate answer in two paragraphs, the first paragraph of each answer being a general denial. A demurrer was sustained to the second paragraph of each answer. There was a verdict and judgment against both appellants in the sum of $2,772.35.

Appellants filed a motion for a new trial, the specifications named therein being that: (1) The verdict is not sustained by sufficient evidence, (2) is contrary to law, (3) that the court erred in permitting the plaintiff to testify as to certain transactions and conversations with Samuel Finch and also in admitting and refusing to admit certain other evidence, and (4) in giving and refusing to give certain instructions.

Appellants' first contention is that when the death of a defendant is suggested, and his administrator is

1. substituted, a demurrer will lie unless a supplemental complaint is filed or the original

complaint is amended so as to make the administrator a party to the pleading.

In *Holland* v. *Holland* (1892), 131 Ind. 196, 30 N. E. 1075, cited by the appellants, the death of one of the defendants was suggested to the court when his administrator was substituted as a party defendant, and without filing a supplemental complaint or any amendments being made to the original complaint, he appeared and was ruled to answer. He then filed a demurrer to the complaint, which was sustained. On appeal it was held that this ruling was not error.

In the case now under consideration the administrator filed an answer and there was a trial on the merits. The question for our determination is not whether it would have been error to have sustained the demurrer, but whether after trial the ruling was reversible error.

Section 350 Burns 1914, §345 R. S. 1881, provides: "The judgment upon overruling a demurrer shall be that the party shall plead over; and the answer or reply shall not be deemed to overrule the objection taken by demurrer. But no objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appears from the whole record that the merits of the cause have been fairly determined. If a party fails to plead after the demurrer is overruled, judgment shall be rendered against him as upon default."

This court in *Vulcan Iron, etc., Co.* v. *Electro, etc., Co.* (1912), 54 Ind. App. 28, 99 N. E. 429, after quoting the above section of the statute said: "When a pleading is held sufficient by the court as against a demurrer, the party demurring may stand upon his demurrer and appeal, or he may plead to the merits. If he takes the former course, the only question presented on appeal is the sufficiency of the pleading to which the demurrer was directed, and, in case such pleading is held insuffi-

cient on appeal, the judgment will be reversed. If he takes the second course, pleads to the merits and proceeds to final judgment, the objection taken by demurrer, may or may not be available to reverse on appeal. If the record does not show affirmatively that such ruling was harmless to the adverse party, the case should be reversed; but if the whole record shows that the case has been fairly determined on its merits, and that the erroneous ruling on demurrer was not prejudicial, the statutes quoted require that the judgment should be affirmed, regardless of such error."

In *Driscoll* v. *Penrod* (1911), 176 Ind. 19, 95 N. E. 313, one of the plaintiffs having died, his administrator was by order of the court substituted as a party plaintiff. On the day set for trial the defendant objected to proceeding with the trial until after an amended or supplemental complaint was filed making the administrator a party plaintiff. The objection was overruled and on appeal the Supreme Court in sustaining the trial court, said: "While the better practice in case of the death of a person is to file a supplemental complaint alleging the fact, and praying for the substitution of the personal representative, stating his qualifications, we fail to see wherein appellants were harmed. They did not seek to controvert the fact of the death of decedent, or the fact that a personal representative had qualified, neither did they seek to reopen the issues.   *   *   * This statute (sec. 700 Burns 1908) was enacted to dispose of such objections as are here raised." See also *Crary* v. *Kurtz* (1906), 132 Iowa 105, 105 N. W. 590, 109 N. W. 452, 119 Am. St. 549.

The overruling of the demurrer to the complaint, if erroneous, is not reversible error. The rule is that a cause will not be reversed on appeal for error in overruling a demurrer, when it appears from the whole

record that the merits of the cause have been fairly determined. *Volker* v. *State* (1912), 177 Ind. 159, 97 N. E. 422.

The second paragraph of answer of each appellant, to which a demurrer was sustained was no more than an argumentative denial. All evidence that could 2. have been introduced under these answers could have been introduced under the general denial. There was no error in sustaining the demurrer to either of these answers.

The next contention is that the court erred in admitting in evidence the contract sued on, for the reason that the appellee was not a competent witness to 3. prove its execution. Appellant Alfred Finch, who, under the name of Ira A. Finch is administrator of the estate of Samuel Finch, testified as a witness in behalf of appellants. He testified that his brother Samuel secured the wheat from appellee under the contract; that the contract was entered into by Finch Brothers and appellee; that he was present at the time when it was made and signed and heard the conversation between his brother Samuel and appellee. Its execution having been subsequently proven by appellants, the error, if any, was cured.

Appellants insist that the word "borrowed" renders the contract ambiguous, and that the court erred in refusing to admit certain oral evidence to show whether the transaction was a bailment or a sale.

In considering this question we should keep in mind that the distinction between an obligation to return the specific thing received, or of returning some- 4. thing of equal value, is the distinction between a bailment and a sale. *Norton* v. *Woodruff* (1849), 2 Comst. (N. Y.) 155.

As said by the court in *Norton* v. *Woodruff, supra,* in speaking of the contract there involved: "Here, how-

ever, the contract is in writing. There is no such ambiguity in the terms as requires the aid of extrinsic testimony to explain them, and the rights of the parties must consequently be determined by its language."

By the contract set out in the complaint Finch Brothers received the wheat for their own use, and expressly agreed to pay appellee the market price therefor when demanded. What right had appellee, under this contract, except to demand the market price and to receive the same in cash, less the $500 already paid? The word "borrowed" when taken in connection with the other parts of the contract means nothing more than that Finch Brothers were to have the immediate use of the wheat and conclusively indicates a sale and fixes the price at the market price at time of demand instead of the market price on day of delivery.

In *Carlisle* v. *Wallace* (1859), 12 Ind. 252, 74 Am. Dec. 207, Wallace placed in the mill of Carlisle 400 bushels of wheat upon the agreement that the latter was at liberty to mix it with his own, convert it into flour when he pleased, sell the flour and appropriate the proceeds to his own use, and whenever Wallace saw fit he had the right to exact from Carlisle the same quantity of the same kind of wheat, or the amount of flour 400 bushels of wheat would make, or the price of wheat per bushel in money. It was there held that, as neither the identical wheat nor the flour made from it was to be returned, and the wheat was to be mixed with that of Carlisle and used by him when he pleased, the contract was one of sale not of bailment.

In *Chase* v. *Washburn* (1853), 1 Ohio St. 244, 59 Am. Dec. 623, it was held that: "Where a ware-houseman receives wheat, and by the consent of the owner, or in accordance with the custom of trade, mixes the wheat in a common mass with the other wheat in his ware-

house, and with the understanding that he is to retain or ship the same for sale on his own account, at pleasure, and on presentation of the ware-house receipt, is either to pay the market price thereof in money, or redeliver the wheat, or other wheat in the place of it; the transaction is not bailment, but a sale."

And where wheat is delivered to the owner of an elevator under an agreement that he is to have the grain on paying the highest market price, the transaction is a sale, not a bailment. *Barnes Bros.* v. *McCrea & Co.* (1888), 75 Iowa 267, 39 N. W. 392, 9 Am. St. 473; *Cloke* v. *Shafroth* (1891), 137 Ill. 393, 27 N. E. 702, 31 Am. St. 375.

And generally it may be said, a bailment takes place where any article of personal property is put by the owner in the hands of another for a specific purpose, or to be returned to the owner or to a third person when the object of the trust is accomplished. There can be no transfer of the right of ownership in a contract of bailment. Where there is a transfer of ownership it becomes a sale.

The court permitted the appellants to show that Finch Brothers had contracted to sell wheat; that they did not have the wheat on hands to fill their contract; that they went out to appellee's farm to see him and entered into a written contract with him and received the wheat from him under this contract and shipped it. The only inference to be drawn is that they received this wheat and shipped it to fill the contract which they had theretofore entered into; that they appropriated it to their exclusive use.

Appellants offered to prove by the appellant Alfred Finch that before the execution of the contract, appellee said that he would bring the wheat in and store it during the summer; that between that time and the fall of the year, he would make a demand for

the market price; that he was not then ready to sell; that his granaries were filled and it would be an accommodation to him if he could store his wheat in appellants' elevator and that the appellant, Alfred Finch, as a part of said conversation said to appellee, "Now, Charley, any time the price of wheat suits you this summer or fall, and you want the market price, you come in and we will give it to you."

This evidence, if admitted would not have had any tendency to prove a bailment. Its only possible effect would have been to have required appellee to make his demand for the market price some time in the summer or fall of 1915. There was no offer to prove any custom relative to the manner in which Finch Brothers conducted their business or that appellee had knowledge of any custom. The fact, if it be a fact, that appellants afterwards purchased other wheat and placed it in their elevator would not have changed the situation. As stated before there was no evidence tending to show that appellants had established any custom in relation to storing grain or that appellee had any knowledge of such custom or that the wheat was delivered in accordance with any custom. Nothing was said to appellee by Finch Brothers which would give him the right to demand the return of any wheat. The only right which he had under the contract was to demand the market price of his wheat when the market price suited him. The contract expressly states that he had this right, and at the time when the contract was executed he received $500 to apply on the purchase price of the wheat.

Appellants do not claim they had a right to demand a refund of the $500 paid on the contract and to compel appellee to accept the return of an equal amount of wheat. The word "borrowed" is inaptly used, if given its more common definition, viz.: taking or receiving something from another on pledge for its return, or without pledge,

but with the understanding that the thing is to be returned or an equivalent of the same kind is to be substituted for it. But according to lexicographers it may also be used to express the idea of receiving from another for one's own use; to appropriate; to take to oneself to the exclusion of others. If we give this last meaning to the word "borrowed" which we do, the contract is not ambiguous. All words are given full force and effect and there is no necessity of resorting to oral evidence. We may also add that all prior oral negotiations were merged in the written contract. There was no error in the exclusion of the offered evidence.

The next contention is that the court erred in refusing to permit Christian Wolf to testify to a conversation which it is claimed he had with appellee July 19, 1917, in which appellee referred to the wheat as "his wheat." This witness testified quite fully about this conversation and disclosed that he was talking to appellee with reference to the wheat delivered under the contract and that in the course of the conversation appellee said he could not settle with the Finch Brothers for the wheat; that they could wait until he got ready; that he would hold the wheat until after the war was over. Appellants have failed to show that any exception was taken to the action of the court in refusing to admit this testimony but if it be admitted that the proper offer was made and exception reserved, there was no reversible error in the action of the court. Neither is there any error shown in the action of the court in refusing to permit this same witness to testify that Samuel Finch on November 22, 1917, offered to return the wheat to appellee or to pay him the market price upon that day for the wheat. This was after the commencement of the action and when appellee was claiming that he had on June 16, 1917, elected to accept the market price of the wheat and that he on that day

had demanded a settlement at the then market price which demand he claimed had been refused.

Complaint is also made that the court at the close of appellee's evidence refused to instruct the jury to return a verdict for appellants. No peremptory instruction appears to have been tendered with the motion, and if one was properly tendered the error, if any, in the action of the court was waived by appellants when they introduced their evidence in defense. *City of Greenfield* v. *Johnson* (1902), 30 Ind. App. 127, 65 N. E. 542.

Instruction No. 5, tendered by appellants, requested the court to charge the jury that if it believed any witness had willfully testified falsely as to any material fact, it was at liberty to disregard his whole testimony.

A witness may testify to many material facts. The jury may believe he has willfully testified falsely as to one fact but as to all the other facts he may have been corroborated by other credible evidence. The jury may have believed his testimony where so corroborated, and if so, they would have no right to disregard that part of his testimony, but they would have the right under such circumstances to disregard any material part of his testimony as to any material fact, where not so corroborated. *Hauks* v. *State* (1897), 148 Ind. 238, 46 N. E. 127, 47 N. E. 465.

The next contention is that the court erred in giving instruction No. 1 tendered by appellee. This instruction is as follows: "This action is based upon a written contract. The law makes it my duty to construe the contract for you and tell you what its legal meaning and purport is, and the law makes it your duty to accept the construction which the court gives. The contract purports to be for a sale of Ten Hundred Thirty-two Bushels and Thirty Pounds of Number

Two red wheat by the plaintiff to Finch Brothers to be paid for at the market price on demand and the payment of Five Hundred Dollars on the purchase price is acknowledged. Under this contract all the terms are fixed, and if you find from the preponderance of the evidence that the contract was executed and that the plaintiff demanded payment of Finch Brothers or either of them for said wheat before the commencement of this suit, and you find from the preponderance of the evidence that the market price of the wheat on the date of the demand and at the place of delivery has been proven, then I instruct you that your verdict should be for the plaintiff against both of the defendants."

Appellants insist that the giving of this instruction is reversible error, (1) Because it does not correctly state the substance of the contract, the word "borrowed" being ignored, (2) that it incorrectly directed their attention to the market price of the wheat at the time of their demand; that the market price at the time of the execution of the contract was at issue, rather than the market price at the time of demand. These contentions cannot prevail. There was no error in giving this instruction.

Complaint is also made of the failure of the court to give instruction No. 1 tendered by appellants, but in view of the conclusion we have reached relative to the admission of the testimony of appellee as to a conversation which he says he had with Samuel Finch, we need not enter into a discussion of this instruction.

The court over the objection and exception of appellants permitted appellee to testify that on May 16, 1917, no one else being present, he had a conversation with Samuel Finch wherein he made a demand on him for the then market price of the wheat and demanded a settlement for said wheat at the market price on that day and that his demand was refused. Appellants contend that under §521 Burns 1914, §498

R. S. 1881, appellee was not a competent witness to testify concerning any transaction or matter occurring between him and Samuel Finch. Said section provides that:

"In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate," etc.

The purpose of this statute was to prevent inducements for fraud and perjury by permitting a party to make out his claim by his own testimony which cannot possibly be met by the testimony of the other party, and to prohibit the living from testifying against the dead. *Sloan, Admr.,* v. *Sloan, Admx.* (1898), 21 Ind. App. 315, 52 N. E. 413.

As said by the court in *Taylor* v. *Duesterberg* (1887), 109 Ind. 164, 9 N. E. 907: "The true spirit of the statute seems to be, that when a party to a subject-matter or contract, in action, is dead, and his rights in the thing or contract have passed to another who represents him in the action or proceeding which involves such contract or subject-matter, to which the deceased was a party, the surviving party to that subject shall not testify to matters occurring during the lifetime of the decedent."

In *Moore* v. *Harlan & Hollingsworth* (1867), 37 Ga. 623, Moore began an action against Harlan and Hollingsworth as partners to recover damages. Moore was offered as a witness in his own behalf, but because Hollingsworth was dead, the trial court held that Moore could not testify. There was nothing in the record showing what Moore would have testified to or whether

Harlan or Hollingsworth made the contract with Moore. In discussing the action of the trial court in refusing to permit Moore to testify the court said: "In this case had there been but two parties to the contract, to-wit: Moore and Hollingsworth; the latter being now dead, the former could not be a witness for himself. It appeared, however, that the contract of plaintiff was with two persons, who were partners, Harlin and Hollingsworth, and that Harlin was alive. The enquiry, in this. state of facts, before deciding upon the question of the competency of Moore, should have been, *with which* of the partners was the contract, for the building of the steam boat, made? If with Hollingsworth *alone*, he being dead at the trial, Moore would have, *then*, been incompetent."

We hold under §521, *supra*, appellee was not competent to testify to the alleged conversation between appellee and Samuel Finch, and that the admission of his testimony on that subject was reversible error.

Judgment reversed with direction to sustain appellants' motion for a new trial.

## ON PETITION FOR REHEARING.

McMAHAN, J.—Appellee on petition for rehearing contends that we erred in holding that he was not a competent witness to testify concerning the conversation he had with the deceased partner wherein he made a demand for the market price of the wheat, and says that our decision is contrary to *Dodds* v. *Rogers* (1879), 68 Ind. 110, which it is claimed is a ruling precedent.

In this we think appellee is in error. In that case the action was founded on a promissory note signed "Snodgrass & Dodds" and alleged to have been executed by Snodgrass and Dodds as partners. Snodgrass having died, the action was prosecuted against his administrator and Dodds. Dodds answered, (1) Denying

under oath the execution of the note, and (2) denying the execution of the note by Snodgrass within the scope of the partnership. The liability against the estate of Snodgrass seems to have been conceded. The real controversy was not as to the liability of his estate, but whether Dodds was liable. Dodds was defending on the theory that the note was not given for the partnership obligation. The plaintiff was permitted to testify relative to a conversation with Snodgrass at the time Snodgrass signed the note, in which Snodgrass said the money for which the note had been given was for the use of the firm. He also testified that he had talked to Dodds about the note both before and after the death of Snodgrass in which he told Dodds what Snodgrass had said, and that in the conversation after Snodgrass' death Dodds said he would pay the note. The purpose of this evidence was not to support a judgment against the estate of Snodgrass, but to fix the liability of Dodds. As said by the court: "Under the issue presented by the administrator, the introduction of the note in evidence would fix the liability against the estate he represented, and the subsequent testimony of the payee against Dodds would tend to relieve rather than burden the estate of Snodgrass." It was not a case where the living was testifying against the dead, but where the testimony of the living was in fact favorable to the dead.

Our attention is also called to the case of *Hess* v. *Lowrey* (1890), 122 Ind. 225, 23 N. E. 156, 7 L. R. A. 90, 17 Am. St. 355, but that was a case where no judgment could be rendered that would in any manner affect the estate of the deceased partner. That was an action *ex delicto*, and in so far as the deceased partner was concerned did not survive. It had for that reason been dismissed as to the administrator of the dead partner's estate and was prosecuted against the surviving part-

ner alone, and in case of judgment being rendered against him, he could not recover any part of it against the estate of the deceased partner, nor would he be entitled to a credit for any part of it in his settlement as surviving partner with the legal representatives of the latter's estate.

The instant case is an action on a contract, where the cause of action survives the death and if a judgment is rendered against the appellant or the surviving partner, the liability of the estate of the dead partner is fixed and established by the testimony of appellee. This is clearly prohibited by the letter and spirit of the statute. See, *Bay View Brewing Co.* v. *Grubb* (1903), 31 Wash. 43, 71 Pac. 553; *Gage* v. *Phillips* (1891), 21 Nev. 150, 26 Pac. 60, 37 Am. St. 494; *Green* v. *Edick* (1874), 56 N. Y. 613; *Clift* v. *Moses* (1889), 112 N. Y. 426, 29 N. E. 392; *Edwards* v. *Parker* (1889), 88 Ala. 356, 6 South. 684; *Alexander's Exrs.* v. *Alford* (1883), 89 Ky. 105, 20 S. W. 164; *Standbridge* v. *Catanach* (1877), 83 Pa. St. 368; *Hanna* v. *Wray* (1874), 77 Pa. St. 27; *Stuart Bros.* v. *Altman* (1894), 8 Tex. Civ. App. 657, 288 S. W. 461.

Rehearing denied.