**In re OTTO–JOHNSON MERCANTILE CO.**
**No. 915.**

District Court, D. New Mexico.
Aug. 31, 1928.

Crampton and Darden, of Raton, N. M., and Tatum & Strong, of Dalhart, Tex., for petitioning creditors.

Easterwood & Thompson, of Clayton, N. M., for receiver in state court.

J. O. Seth, of Santa Fe, N. M., for trustee in bankruptcy.

Hunker & Noble, of East Las Vegas, N. M., for J. I. Staley.

F. S. Merriau, of Raton, N. M., for General Motors Acceptance Corporation.

Hugh B. Woodward, of Albuquerque, N. M., for bankrupt.

Joseph Gill, of Albuquerque, N. M., for certain general creditors.

PHILLIPS, District Judge.

This is a petition by the General Motors Acceptance Corporation to review an order of the referee.

The facts are not in dispute, and are as follows:

Prior to February 28, 1927, the Otto-Johnson Mercantile Company ordered from the Buick Motor Company, Denver Branch, three Buick automobiles. On February 28, 1927, the Buick Motor Company, of Flint, Michigan, shipped the three motor vehicles in question to the Mercantile Company at Clayton, New Mexico. It sent the bill of lading therefor to the Buick Motor Company, Denver Branch, Denver, Colorado. On receipt of the bill of lading, on March 4, 1927, the Buick Motor Company, Denver Branch, billed the Otto-Johnson Mercantile Company for the price of the cars, drew a draft upon the Mercantile Company, through the United States National Bank of Denver, Colorado, for the sum of $348.00, and executed a bill of sale of the three motor vehicles from the Buick Motor Company to the Acceptance Corporation. The United States National Bank forwarded such statement, draft, bill of sale, bill of lading with a trust receipt, and promissory note running from the Mercantile Company to the Acceptance Corporation, to the Farmer's and Stockman's bank at Clayton with instructions to deliver the bill of lading to the Mercantile Company upon its payment of the draft and its execution of the trust receipt and promissory note. On March 9, 1927, the Mercantile Company paid the draft, executed the trust receipt and promissory note, took up the bill of lading, presented it to the railway company at Clayton, paid the freight upon such motor vehi-

cles, and took physical possession of said vehicles.

The Farmer's and Stockman's Bank remitted the proceeds of the draft together with the bill of sale, trust receipt and promissory note to the United States National Bank. The proceeds were deposited to the credit of the Buick Motor Company, Denver Branch, and the bill of sale, trust receipt and promissory note were delivered to the General Motors Acceptance Corporation.

The trust receipt reads as follows:

"Received of General Motors Acceptance Corporation the Motor Vehicles described above.

"I (we) hereby acknowledge that said motor vehicles are the property of said General Motors Acceptance Corporation and agree to take and hold the same, at my (our) sole risk as to all loss or injury, for the purpose of storing said property; and I (we) hereby agree to keep said motor vehicles brand new and not to operate them for demonstrating or otherwise, except as may be necessary to drive said Motor Vehicles from freight depot or from above city to my (our) place of business with all due care at my (our) risk enroute against all loss and damage to said motor vehicles, persons or property, and except as I (we) may be allowed by you in a special case to use the same for demonstrating upon our compliance with the conditions expressed in your instructions to us, and to return said motor vehicles to said General Motors Acceptance Corporation or its order upon demand; and pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said motor vehicles to any other person until after payment of amounts shown on dealer's record of purchase and release of like identification number herewith. I further agree that the deposit made by me (us), in connection with this transaction, may be applied for reimbursement for any expense incurred by General Motors Acceptance Corporation, in the event of breach of this trust or repossession of said motor vehicles.

"It is further agreed that no one has authority to vary the terms of this trust receipt.

"Executed this 10th day of March 1927 at Clayton, New Mexico.
"Otto-Johnson Mercantile Co.
"(Dealer)
"By M. E. Johnson
"President (Official Title if Company)

After the bankruptcy of the Mercantile Company, the Acceptance Company applied to the referee for an order on the trustee in bankruptcy directing the trustee to deliver possession of the three motor vehicles to the Acceptance Corporation. The referee denied the petition of the Acceptance Corporation.

The referee held that the title to the motor vehicles in question passed to the trustee in bankruptcy, and that the Acceptance Corporation occupied the relation thereto of either chattel mortgagee or conditional sale vendor.

The cases bearing on the question here presented are collated in notes in 25 A. L. R. at page 332, and 49 A. L. R. at page 282.

A splendid review of the authorities may be found in the case of In re A. E. Fountain, Inc. (C. C. A.) 282 F. 816, 826, 25 A. L. R. 319.

An exhaustive article and review of the adjudicated cases on trust receipts by Karl T. Frederick, Esquire, of the New York Bar, may be found in the Columbia Law Review, issues of May and June, 1922. In pointing out the distinction between a true trust receipt relationship and that of chattel mortgagor and mortgagee, Mr. Frederick said:

"The distinction is one that exists in fact —it is real and it is clear-cut and workable. This ground of differentiation is the fact that title does not pass to the bank from the importer but rather from a third person. The importer has never held the legal title. He has arranged a purchase money mortgage to the banker, who makes the loan, without himself appearing in the chain of title. No one is deceived by the fact that the bank has acquired a security title which is unrecorded, because there is no retention of possession by the importer. He has never had either possession or title. To state it again, the difference between the true trust receipt situation and the ordinary chattel mortgage is the fact that in the trust receipt, title passes to the bank (the mortgagee) from the seller of goods, as security for the debt of a third party, while in the ordinary chattel mortgage, title passes to the bank (mortgagee) directly from the party owing the debt."

The importance of this distinction is also alluded to in the decision of the Second Circuit In re A. E. Fountain, Inc., supra, where the court said:

"The only cases where the holders of trust receipts have been allowed by this court to prevail against the ultimate purchaser or his trustee in bankruptcy, have been those where

the title of the holder of the trust receipt was derived from some one other than the debtor."

The annotators of A. L. R., in the note in 49 A. L. R. 282, say:

"Under the ordinary form of trust receipt, it is well settled that the title to the property is in the holder of the receipt, and not in the receiptor; and the rights incident to such title and ownership will be enforced as against the one giving the receipt, his receiver, trustee in bankruptcy, and creditors generally. The courts in so holding are, in most instances, merely giving effect to the express provisions of the trust receipt, one of which commonly is that the goods are held as the property of the party to whom the receipt is given."

It will be observed in the instant case that the title to the property passed directly from the Buick Motor Company to the Acceptance Corporation, and that possession of the property passed to the Mercantile Company after it had executed the trust receipt in question.

Since the title to the motor vehicles never vested in the Mercantile Company but passed directly to the Acceptance Corporation where it has remained at all times, it is difficult for me to conceive how the Mercantile Company could have given the Acceptance Corporation a chattel mortgage upon the motor vehicles in question.

Neither was there, in my opinion, a relationship of conditional sale vendor and vendee. The seller in the instant case was the Buick Motor Company. The title was not conditionally retained in the seller as security for the purchase price, but was passed to the Acceptance Corporation, which in turn extended credit to the Mercantile Company and advanced the money to pay for the motor vehicles and took the title thereto directly from the seller to secure such advance. It delivered possession to the Mercantile Company upon the express conditions set forth in the trust receipt. The Mercantile Company could not use the automobiles, it could not sell, loan, deliver, pledge, mortgage or otherwise dispose of them, and it agreed to return them to the Acceptance Corporation upon demand.

I think the true relation between the Acceptance Corporation and the Mercantile Company was that of bailor and bailee with an option in the bailee, the Mercantile Company, to purchase the automobiles upon payment of the price fixed in the schedule, as a special method of securing the advances made by the former to the latter. General Motors Acceptance Corporation v. Hupfer, 113 Neb. 228, 202 N. W. 627; Brown v. Billington, 163 Pa. 76, 29 A. 904, 43 Am. St. Rep. 780; Monjo v. French, 163 Pa. 107, 29 A. 907; Commercial Credit Co. v. Peak, 195 Cal. 27, 231 P. 340.

An option to purchase in the holder of a chattel will not destroy his character as bailee. Clay, Robinson & Co. v. Martinez, 74 Colo. 10, 218 P. 903, 904.

We are not dealing here with the question of an innocent purchaser for value, but with the rights of a trustee in bankruptcy. In re Klein (C. C. A.) 3 F.(2d) 375, 377.

It may be that a trust receipt should be filed or recorded as a chattel mortgage, but that question is one of policy for the legislature, and not for the courts to determine.

The order of the referee in bankruptcy is reversed with instructions to enter an order directing the trustee to deliver the motor vehicles to the petitioner Acceptance Corporation.