**SANDACK v. TAMME.**
**In re HATFIELD.**
No. 4028.

United States Court of Appeals
Tenth Circuit.
May 1, 1950.

Harry L. Bigbee, Santa Fe, N. M. (Edwin L. Felter, Washington, D. C., was with him on the brief), for appellant.

Cecil McIntosh, Santa Fe, N. M. (Watson, McIntosh & Watson, Santa Fe, N. M., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

An involuntary petition in bankruptcy was filed against Hoyt V. Hatfield, doing business as Hatfield Jewelers in Santa Fe, New Mexico, and a receiver was appointed pending adjudication and the qualification of a trustee. Ben Sandack filed in the proceeding a petition in reclamation of certain merchandise which was in the place of business at the time of the filing of the petition in bankruptcy. An order of adjudication was entered and a trustee qualified. The court denied the petition in reclamation, and Sandack appealed.

The petition in reclamation was submitted to the court on these stipulated facts. Sandack shipped certain merchandise to Hatfield on written memorandum. The memorandum stated that the goods therein itemized were billed on consigned memorandum and should remain the property of Sandack and be returned to him on demand. The purpose of that provision was to retain title in Sandack while the property was in the possession of Hatfield, and to enable him to regain possession thereof at any time. The memorandum was signed by Hatfield but not acknowledged by either party and was not recorded or filed in the office of the county clerk. Some of the merchandise was sold in the regular course of business and Hatfield accounted to Sandack for the proceeds therefrom. For approximately five days prior to the filing of the petition in bankruptcy, Hatfield was engaged in conducting an auction sale of jewelry and merchandise at his place of business. Sandack was employed as auctioneer and he also acted as salesman. All cash from sales was received by a cashier. At the end of each day an accounting and settlement was had between Hatfield and Sandack. Sandack received a commission on sales made by him as salesman, and he received the cost and one-half of the profit on sales of goods listed in the memorandum. The unsold portion of the merchandise listed in the memorandum was still in the store at the intervention of bankruptcy and it was identifiable from other merchandise. No payment had been made to Sandack on the consigned merchandise remaining in the store, and the claim in reclamation related exclusively to it. Hatfield did not make any representations to third persons respecting the ownership of the consigned merchandise and he did not obtain any credit on the strength of his ownership of it.

The arrangement between Sandack and Hatfield did not contemplate that the latter should pay the former anything on account of the merchandise until it was sold to the customer at Hatfield's place of business. Until sold, Hatfield was not expressly or impliedly obligated to pay anything for the merchandise. When sold, he was obligated to account to Sandack on the basis of the list prices contained in the memorandum. Until sold, he had the continuing right to relieve himself of all further obligation or liability by surrendering the property to Sandack. There was no conditional sale to Hatfield with title reserved in Sandack. Title did not vest in Hatfield. It remained in Sandack until the merchandise was sold and then it passed directly to the purchaser. The contract was one merely of consignment and not of sale, and the relation between the parties was that of bailor and bailee. In re Harris & Bacherig, D.C., 214 F. 482; McCallum v. Bray-Robinson Clothing Co., 6 Cir., 24 F.2d 35.

The decisive question on which the case turns is whether sections 53-1101, 53-1102, and 53-1104 of the New Mexico Statutes 1941, have application to consigned property held by a bailee under the circumstances outlined. Section 53-1101 provides that all conditional sales contracts, leases, purchase leases, sales leases, or other instruments in writing that are intended to hold the title to personal property in the former owner, possessor, or grantor shall be acknowledged by the seller and purchaser, or the lessor and lessee, as the case may be, in the same manner as conveyances affecting real estate. Section 53-1102 provides that every such instrument shall be either recorded or filed in the office of the county clerk of the county in which the property is situated, in accordance with the law relating to the filing or recording of chattel mortgages. And section 53-1104 provides in presently material part that the failure to so record or file any such instrument in writing shall render it void as against a trustee in bankruptcy from the date of the adjudication in bankruptcy.

It is to be noted that section 53-1101 includes in clear terms of specific enumeration conditional sales contracts, leases, purchase leases, and sales leases. But it does not speak of consignments or bailments. It is silent in respect to contracts of that kind although they have long been in common use. It is also to be noted that the statute requires that the written instruments therein referred to be acknowledged by the seller and purchaser, or the lessor and lessee, as the case may be. But it does not speak of an instrument being acknowledged by the consignor and consignee, or the bailor and bailee. It does not mention those words although they were recognized words of common nomenclature in contracts of consignment and bailment of the kind involved here. The legislature was careful to mention by name sales contracts, leases, purchase leases, and sales leases as the instruments it had in mind. It was equally careful to name sellers and purchasers, and lessors and lessees, as the persons it had in mind. But significantly it did not mention consignments or bailments as instruments to be acknowledged.

Neither did it mention consignors, consignees, bailors, or bailees as persons required to acknowledge the instruments intended to be included in the statute. In the transaction between Sandack and Hatfield, there was no conditional sales contract, no lease of any kind, no seller, no purchaser, no lessor, and no lessee. After enumerating sales contracts, leases, purchase leases, and sales leases, the statute includes in general language other instruments in writing that are intended to hold title in the former owner, possessor, or grantor. Sandack was not the former owner of the consigned merchandise. He was the present owner. He was not the grantor. He did not sell the property or any interest in it at the time it passed into the hands of Hatfield. He was the former possessor. But it is a well recognized rule of statutory construction in New Mexico and elsewhere that the meaning of words is affected by their context, and that general words which standing alone might have a wide and comprehensive meaning, when joined with an enumeration of articles, things, and entities, will be interpreted in their narrower sense and understood to refer only to articles, things, and entities fairly similar in kind, class, and nature to those set forth in the associated list of enumeration. General words used in that manner will be given a restricted meaning, limited to articles, things, or entities fairly comparable in class and kind to those enumerated. Grafe v. Delgado, 30 N.M. 150, 228 P. 601.

When section 53-1101 is considered as a whole in the light of the general rule of interpretation to which reference has been made, it seems fairly plain that the legislative intent was to require the acknowledgment of sales contracts, lease contracts, and other fairly comparable written instruments in which the purchaser, lessee, or new possessor has some legal or equitable title, right, or interest in the property wider in scope and deeper in effect than that of a mere consignee or bailee holding possession of consigned property without title, with the continuing right at his election to relieve himself of all further responsibility for the property by surrendering it to its owner, and with the con-

tinuing duty to surrender it on the demand of its owner. A more definite expression than is found in the statute should be required before indulging the inference that there was an underlying legislative purpose to bring within its purview a memorandum of consignment under which personal property is placed in the hands of a bailee in circumstances such as we find in this record. The judicial inference should not be drawn with labored difficulty that the legislature intended the words "other instruments in writing", joined with the enumerated list of instruments, to include a mere memorandum of consignment under which personal property is placed in the hands of a bailee without title and without obligation to purchase.

It may well be that as a matter of sound policy a memorandum of consignment in the nature of a bailment should be on par with sales contracts and leases insofar as the requirement for being acknowledged and recorded or filed is concerned, but that was a matter exclusively for the legislature in the enactment of the statute. Its determination is not for the courts.

■ Inasmuch as section 53-1101 does not have application to consigned property placed in the custody of a bailee such as Hatfield, sections 53-1102 and 53-1104 likewise do not have application, and therefore title to the consigned merchandise described in the petition in reclamation was not forfeited to the trustee in bankruptcy. Cf. In re Otto-Johnson Mercantile Co., D.C., 52 F.2d 678.

The challenged order is reversed and the cause is remanded with directions to grant the petition in reclamation.

PHILLIPS, Chief Judge (dissenting).

This is an appeal from an order denying a petition in reclamation in a bankruptcy proceeding.

The question presented is whether an assignment contract was void as against the trustee in bankruptcy because it was not recorded or filed in accordance with Chapter 8, New Mexico Laws of 1923, N.M.Stat. Ann., Vol. 4, §§ 53-1101, 53-1102, 53-1103 and 53-1104. The consignment contract, in part, read as follows:

"June 18, 1949.

"Ben Sandack, 5 S. Wabash Ave., Chicago, Ill.

"Ship to Hatfield Jewelers, 142 Lincoln St., Santa Fe, N. Mex.

"These goods are billed on consigned memorandum and remain the property of Ben Sandack of Chicago, Ill., and to be returned to Ben Sandack on demand."

The contract then set forth a large number of items of jewelry, described and numbered each item, and opposite each item set forth the value or price thereof in dollars and cents. The jewelry was shipped to the bankrupt with the understanding that he was to sell the same, account daily to Sandack for the value of each item sold as indicated in the contract and retain the excess, if any, and pass the title to each item sold to the purchaser. The contract was neither recorded nor filed, as required by the above-mentioned statute. The title of Chapter 8, supra, reads as follows: "An act relating to conditional sales contracts, leases, purchase leases, sale leases and other instruments in writing that are intended to hold the title to personal property in the former owner, possessor or grantor until the value or purchase-price is fully paid."

Section 53-1101 provides: "Hereafter all conditional sales contracts, leases, purchase leases, sale leases, or other instruments in writing that are intended to hold the title to personal property in the former owner, possessor or grantor, shall be acknowledged by the sellor and purchaser, lessor and lessee, as the case may be, in the same manner as conveyances affecting real estate."

Section 53-1102 provides that every instrument described in § 53-1101 shall be either recorded or filed. Section 53-1104 provides that the failure to so record or file such instrument shall render the same void as to subsequent mortgages in good faith, purchasers for value without notice, subsequent judgment or attaching creditors without notice, from the date of the entry of such judgment or the levy of such at-

tachment, and as against trustees in bankruptcy from the date of the adjudication.

In re Otto-Johnson Mercantile Co., D.C. N.M., 52 F.2d 678, is clearly distinguishable from the instant case. In the Mercantile Co. case, a true trust receipt was involved. The trust receiptee derived title to the property embraced in the trust receipt directly from a third party and not from the trust receiptor, and the trust receiptee was not a former owner, grantor or possessor of such property. It is only under those peculiar circumstances that a holder of a trust receipt may prevail against the trustee in bankruptcy of the trust receiptor. That distinction was clearly pointed out in the Mercantile Co. case, supra, and in In re A. E. Fountain, Inc., 2 Cir., 282 F. 816. See, also, notes 25 A.L.R. 332 and 49 A.L.R. 282. In the instant case, Sandack was the owner and former possessor of the jewelry. The bankrupt had the right to sell the jewelry, as an owner, to third persons and pass the title to the purchaser. The bankrupt was authorized to sell each item of jewelry at such price as he chose, either more or less than the value or price set forth in the contract. The bankrupt was not obligated to remit the amount for which he sold an item, or a specific portion thereof. The bankrupt's obligation was to pay Sandack daily the agreed price of each item sold. As auctioneer, Sandack acted not for himself, but as agent for the bankrupt, and received a commission for his services. Title to the jewelry passed from Sandack to the bankrupt and from the bankrupt to the purchaser, simultaneously. In selling the jewelry, the bankrupt acted, not as the agent of Sandack, but for himself. The bankrupt at any time could have paid Sandack the agreed value of the items of jewelry and acquired the title thereto.

The instrument was a security device designed to place the jewelry in the possession of the bankrupt, to authorize him to sell the jewelry and to pass title to the purchaser and to obligate him to pay the agreed value of each item of jewelry sold on the day of sale, and to retain the title in Sandack until the jewelry was sold, and to enable Sandack to repossess any unsold jewelry in the event of default by the bankrupt.

The terms of the New Mexico statute are broad. In my opinion, it covers every instrument intended to serve as a security device, where the owner delivers possession of personal property to another, and where the title to such personal property is retained in the former owner, grantor or possessor until the purchase price is paid.

The failure of the statute to specifically include the term "bailments" in the phrase, "conditional sales contracts, leases, purchase leases, sale leases," is not, in my opinion, significant. Bailment is a term of much broader signification than the security instruments specifically named. There was no intent to embrace many types of bailment. In many bailments, the bailee has no right to dispose of the property, but is obligated to return the specific property to the bailor. Indeed, an agreement to return the property delivered to the bailee, when the purpose of the bailment has been served, is an element of the ordinary and usual contract of bailment.[1] It is only where a bailment is employed as a security device that the instrument falls within the statute.

Here, the instrument involved falls squarely within the literal language of the statute, and, in my opinion, it falls within its intended purview.

I would affirm.

---

[1] Zeterstrom v. Thomas, 92 Conn. 702, 104 A. 237, 1 A.L.R. 392; Samples v. Geary, Mo.App., 292 S.W. 1066, 1067; Suits v. Electric Park Amusement Co., 213 Mo.App. 275, 249 S.W. 656, 657; Broaddus v. Commercial Natl. Bank of Muskogee, 113 Okl. 10, 237 P. 583, 584, 42 A.L.R. 1331; Tomko v. Sharp, 87 N.J. L. 385, 94 A. 793, 794; Finch v. McClellan, 77 Ind.App. 533, 130 N.E. 13, 16, 131 N.E. 236; Hogan v. O'Brien, 123 Misc. 865, 206 N.Y.S. 831, 833; McBride v. McNally, 243 Pa. 206, 89 A. 1131, 1132, 52 L.R.A.,N.S., 259; Firestone Tire & Rubber Co. v. Cross, 4 Cir., 17 F.2d 417, 418; Walter A. Wood Mowing and Reaping Mach'ne Co. v. Vanstory, 4 Cir., 171 F. 375, 378; Cosden v. Cline, 8 Cir., 32 F.2d 1003; State v. Chew Muck You, 20 Or. 215, 25 P. 355, 356.