BARNES BROS. v. McCREA & Co. *et al.*

Sale: OF GRAIN TO ELEVATOR: WHAT CONSTITUTES: BAILMENT DISTIN-
GUISHED. Plaintiffs delivered oats to H., who operated an elevator,
under an alleged oral agreement that they were to remain in the
elevator until plaintiffs were ready to sell them, and that H. was
then to have them if he would pay as much as was paid by others;
and in case he did not buy, he was to have one cent per bushel for
weighing them in and out. Plaintiffs knew that the oats so deliv-
ered were mixed in a mass with others, and that H. was accus-
tomed to ship from the mass whenever the prices suited him; and
they could not have entertained the thought that the identical oats
were in any case to be returned to them. *Held* that the true mean-
ing of the contract was that H. was to have the option to pay the
best market price for the oats whenever plaintiffs desired to close
the transaction, or to return to them an equal quantity of similar
oats; and that it was a contract of sale and not of bailment. And
H. having afterwards mortgaged to defendants all the oats then in
the elevator,—including, however, none of the identical oats deliv-
ered by plaintiffs,—*held* that plaintiffs could not, as against
defendants, set up any claim to the mortgaged oats. (*Johnston v.
Browne*, 37 Iowa, 200, *followed*, and *Sexton v. Graham*, 53 Iowa, 181,
*distinguished*).

*Appeal from Boone District Court.* — HON. L. G.
KINNE, Judge.

FILED, SEPTEMBER 10, 1888.

ON the eighteenth day of February, 1887, the plain-
tiffs commenced hauling oats to the elevator of F. C.
Huntley, in Ogden, and on the third day of the next
March completed the delivery thereat of about fifteen
hundred and eighty-six bushels. On the twenty-fourth
day of June, 1887, Huntley failed, and defendants took
possession of all the oats in his elevator, amounting to
about two thousand bushels. Possession was so taken
under a chattel mortgage executed by Huntley on the
second day of October, 1886. The plaintiffs allege that
at the time of the failure they were the owners of the
oats, and that defendants have taken and converted

thém to their own use. After the evidence had been introduced, defendants moved the court to instruct the jury to return a verdict for them. The motion was sustained, and a verdict and judgment were rendered accordingly. · The plaintiffs appeal.

*Clayton Harrington* and *E. L.. Green*, for appellants.

*Crooks & Jordan*, for appellees.

ROBINSON, J.—The motion to instruct the jury for the defendants was based upon the grounds that the agreement between plaintiffs and Huntley, under which the oats were delivered in the elevator, was in legal effect a sale, and not a bailment, and that none of the oats so delivered by plaintiffs were among those taken by defendants. The evidence shows that at the time in question Huntley was engaged in the business of buying, shipping and selling grain for himself, and in storing grain in his elevator for others. This elevator contained fifteen bins, in which grain he purchased and grain stored was placed indiscriminately, and mixed. When plaintiffs delivered their oats, a large amount was being received by Huntley, and all were mixed together in various bins, without regard to ownership, and plaintiffs knew that fact. They also knew that Huntley was shipping to Chicago, and selling when he could obtain satisfactory prices, and that such had been his custom for years. The only oats taken by defendants were the contents of a bin which was filled in the fall of 1886, and had not been disturbed, and a few hundred bushels purchased by Huntley after the third day of March, 1887, and a few days before the failure. None of the oats actually delivered by plaintiffs, and none of the oats with which theirs had been mixed, were taken by defendants. No warehouse receipt was taken · by plaintiffs, and no writing was delivered to them, excepting a memorandum of the number of bushels and pounds of oats hauled and the dates of delivery. The appellants claim that their oats were delivered under a verbal

agreement that they were to stay in the elevator until plaintiffs were ready to sell them. Huntley was then to have them, if he would pay as much as was paid by other parties in Ogden or Berkley, and in case he did not buy, he was to receive one cent per bushel for weighing the oats in and out. The statements of plaintiffs in regard to the contract must be taken and construed in connection with admitted and known facts. When so considered, it is evident that plaintiffs could not have understood that the identical grain which they delivered was to be retained in the elevator, and returned to them if not purchased by Huntley. They knew that to be impossible, because they saw it mixed with other grain, from day to day, as it was delivered. They could not have understood that the mass with which their oats were mixed was to be retained in the elevator until they should sell or receive therefrom the number of bushels they delivered, for the reason that they knew that Huntley shipped and sold from this mass from time to time, as the prices suited him. The only conclusion which can properly be drawn from the evidence is that the oats were delivered to Huntley under an agreement by which he could elect to return to plaintiffs an equal quantity of oats, when they desired to close the transaction, or in lieu thereof to pay to them the highest market price for the same in Ogden or Berkley. The right to make the election was vested in Huntley alone. Plaintiffs could not withdraw any oats, unless Huntley refused to pay for them the highest market price in the places named. These facts bring the case within the rule announced in *Johnston v. Browne*, 37 Iowa, 200. But it is said that the decision in that case is in conflict with the later one in *Sexton v. Graham*, 53 Iowa, 181. In the last-named case it was said " that where a warehouse-man merely receives grain from several depositors, with the understanding that it may be mixed in a common mass, and it is so mixed, the transaction is a bailment, and the depositors are tenants in common." And that doctrine seems to be sustained by the authorities. The majority opinion goes further, and holds, in effect, that

the common mass from which each owner is entitled to draw need not contain any of the grain which constituted the original mass. This seems to have been based, in part at least, upon the thought that the warehouse receipt attaches to each new deposit, and that the receipt holder becomes and remains at all times a tenant in common of the mass which is being increased or diminished. The opinion was the result of the conclusion of the majority that the original transaction between Sexton & Abbott and Graham was one of bailment, and that, while the entire contents of the warehouse were changed several times, yet that the amount of grain in store, at any given time, was neither greater nor less by reason of the change; and, further, that by reason of the plan of handling the grain, all which the warehouse contained at any time was to be considered the common mass from which each depositor was entitled to draw. In other words, the majority opinion rests upon the conclusion of those who concurred in it, that the grain in question was deposited under a contract of bailment, and that nothing afterwards transpired to change the contract, nor to change the relation of the depositors to the contents of the warehouse. If the conclusions are correct, the decision was justified. But in our opinion the contract in this case was not one of bailment, but of sale. This necessarily results from the fact that plaintiffs delivered the grain with knowledge that it was being mixed with other grain which was being shipped by Huntley, and from the further fact that Huntley had the right to retain the grain on paying for it the highest market price in the two places designated. The facts show that the contract must have been made with reference to Huntley's known course of dealing. *Hughes v. Stanley*, 45 Iowa, 625. In case grain was returned to plaintiffs, they were to pay Huntley for weighing in and out, but nothing for storage. It was said, in *Norton v. Woodruff*, 2 N. Y. 156, that "the distinction between an obligation to restore the specific thing received, or of returning others of equal value, is the distinction between a bailment and a debt, so recognized by the decisions in England and this state, with the exception

of *Seymour v. Brown*, 19 Johns. 44," and that "the decision in *Seymour v. Brown* has been overruled in the same court in which it was pronounced, and cannot, we think, be sustained upon principle or authority." The case of *Norton v. Woodruff* was approved in *Johnston v. Browne*. The principle therein announced is sustained by numerous decisions. *Wilson v. Cooper*, 10 Iowa, 566; *Seymour v. Wyckoff*, 10 N. Y. 216; 2 Kent Comm. 589; *Chase v. Washburn*, 1 Ohio St. 244; *Hurd v. West*, 7 Cow. 752; *Ewing v. French*, 1 Blackf. 354; *Lonergan v. Stewart*, 55 Ill. 45; *Butterfield v. Lathrop*, 71 Pa. St. 226; *Rahilly v. Wilson*, 3 Dill. 420. We are satisfied with the doctrine of *Johnston v. Browne*, and think it controls in this case. The judgment of the district court is therefore

AFFIRMED.