No. 22,224.

LEE BONNETT, *Appellant*, v. THE FARMERS & GROWERS SHIPPING ASSOCIATION et al., *Appellees*.

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Grain Deposited in Elevator—Sale Distinguished from Bailment.* Plaintiff deposited grain in an elevator with the understanding that it was to be indiscriminately mixed in a mass with other grain from which the owner of the elevator had the privilege of shipping. There was no agreement that the elevator company would keep on hand an amount of wheat of like grade and quantity until plaintiff saw fit to dispose of his wheat, but it was the intention of plaintiff, when the price was satisfactory, to present to the elevator owner his scale ticket and receive the prevailing market price for the wheat. *Held,* that the transaction constituted a sale, and not a bailment.

2. SAME—*Evidence—Findings.* The evidence is considered, and held to sustain the findings of fact.

3. SAME—*Evidence Shows a Sale—Not a Bailment.* From the plaintiff's admissions and other circumstances, it is held to have been a reasonable inference that he understood he was to be paid in cash or grain of an equal amount and quality.

4. ACTIONS—*Conversion of Wheat—Fraud—Inconsistent Remedies.* The transaction being a sale, and not a bailment, it was the right of the elevator owner to treat the grain as its own and to make any disposition thereof it saw fit, being responsible to the plaintiff for the value; and in an action where plaintiff seeks and recovers damages for conversion against the corporation owning the elevator, he is not entitled to recover against officers of the corporation upon the ground that they permitted it to engage in unlawful grain speculations whereby it became insolvent, because the two remedies are inconsistent.

Appeal from Rice district court; DANIEL A. BANTA, judge. Opinion filed June 7, 1919. Affirmed.

*F. L. Martin, Van M. Martin,* and *John M. Martin,* all of Hutchinson, for the appellant; *C. M. Williams,* of Hutchinson, of counsel.

*Samuel Jones, Ben Jones,* both of Lyons, and *J. R. Beaching,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action was for the conversion of wheat which plaintiff alleged he had delivered to the defendant association to be placed in bins in its elevator and to be kept and held for storage. The shipping association is insolvent, and plaintiff joined as defendants several of its stockholders and officers, and alleged that they had converted the wheat to their own use; that certain of the directors, with the consent of others, had caused the association to engage in illegal speculations in grain in the name of the association and for its benefit; and that some of the individual defendants had been engaged in the same kind of illegal transactions. Judgment was asked against all the defendants for the value of the wheat. Plaintiff was given judgment against the insolvent corporation for the value of the wheat, but was denied judgment against the other defendants, and appeals.

The answer of the association alleged that the wheat was sold to the association, and was mixed and mingled with other wheat of different grades and kinds; that it was to be paid for

at such time as plaintiff desired to settle, and at the market price on the date of settlement, which was to be selected by him.

The principal question involved is whether the delivery of the wheat constituted a sale or a bailment. When it was delivered the association issued to plaintiff the usual scale ticket showing the number of bushels and grade, but otherwise the arrangement was verbal. The court, after making findings of fact, held that the transaction was a sale, and not a bailment. The following is the finding upon which the case turns:

"I find that the plaintiff placed 330 bushels of wheat in the elevator of The Farmers and Growers Shipping Association at Sterling, Kan., in the months of October and November, 1916, with the understanding that he was to be charged nothing for a short time and a reasonable charge thereafter; that the same was graded and weighed in to the company, and the loss by shrinkage was to fall upon the elevator company; that the said wheat was mixed and mingled with wheat belonging to the elevator company, and to various other persons, of varying grade and weight, with the knowledge and consent of the plaintiff; that there was no agreement or understanding between him and the elevator company that it would at all times keep on hand an amount of wheat of like grade and character as his until he saw fit to dispose of his wheat; that it was his understanding that it was optional with the elevator company to return to him on demand an equal amount of wheat of like grade and quality or to pay the then prevailing market price therefor. That it was the purpose and intention of the plaintiff, when the price was satisfactory to him, to present to the defendant, The Farmers and Growers Shipping Association, his scale tickets and to receive the price therefor in money; that he had no intention of receiving back a like amount and quality of wheat, unless the elevator company refused to pay the market value at the time of demand."

As conclusions of law the court held that under the facts and circumstances testified to by the plaintiff himself, the transaction amounted to a sale, and not a bailment; and that, being a sale, there was consequently no conversion, and that plaintiff was not entitled to recover against any of the defendants, except the shipping association.

The court held, and we think properly, that the case falls within the rule declared in *Barnes Bros. v. McCrea & Co.*, 75 Iowa, 267. There it was held that where grain is delivered to an elevator owner under an alleged oral agreement that the latter was to have the grain on paying the highest market price, or in case he did not buy, to receive pay for weighing,

but not for storage, it being known to the party who delivered the grain that it was indiscriminately mixed in a mass with other grain from which the elevator owner was accustomed to ship when prices suited him, the transaction is a sale and not a bailment.

The same general rule was stated in *Scott v. Shultz*, 67 Kan. 605, 607, 73 Pac. 903, where it was said:

"If the identical thing delivered is to be returned, it is a bailment, and there is no transfer of title; but if the one to whom it is delivered may return another thing of the same kind, or an equivalent in the form of money, or otherwise, it will ordinarily constitute a sale and effect a change of title."

"Where, however, grain is delivered to a warehouseman, who mixes it with that of others, under an express contract, or a contract implied from the usual course of business, that when the depositor chooses to call for it the warehouseman will pay the highest market price or return the same amount of grain of like quality, the transaction will not be deemed a bailment, but a sale with an option on the part of the purchaser to pay either in money or property as stipulated." (3 R. C. L. 76.)

In Dobie on Bailments and Carriers it is said:

"But when the obligation imposed on the elevator keeper by the receipt of the grain is merely to return grain of a certain quantity and quality, then the transaction cannot be a bailment. The same is true when the keeper has the right to use any and all of the grain on payment therefor, either in money or other grain, without any duty of substitution of other grain therefor in the elevator; and also when the keeper has the option whether he shall return the grain delivered or pay for the grain. In all of these cases, the keeper could destroy the grain when received without impairing the legal rights of the depositor, and this is here inconsistent with the legal notion of a bailment." (p. 9.)

It is insisted that the court did not properly consider evidence on the question of fact, and that the evidence clearly showed that plaintiff placed the wheat in the elevator with the express declaration that he was not ready to sell it, did not intend to sell it; and that other circumstances, including the fact that the shipping association made no return to the tax assessor indicating that the wheat belonged to it, showed the transaction was treated by the parties as a bailment, and not a sale. We think the plaintiff's admissions on his cross-examination were sufficient to support the findings.

But it is insisted that the finding to the effect that there was no agreement by the association to keep a like quantity

or- grade of wheat until demanded is unsupported by any evidence. In the first place, it devolved upon plaintiff to prove this. The controlling fact, shown by plaintiff's testimony, is that he was waiting for a price before he settled for his wheat, and that it was his understanding that when he got ready to dispose of it he would take his ticket in and they would settle with him at the market price. In order to establish the fact of a bailment, it was necessary for him to show that from the inception of the transaction he retained the right whether to elect to demand the return of his wheat, or other wheat of like grade, because if he surrendered to the shipping association the right to pay either in money or in grain the transaction constituted a sale. (*Savage v. Salem Mills Co.,* 48 Or. 1.) In a note to the same case in 10 Ann. Cas. 1076, authorities are cited holding that an agreement may be inferred to the effect that the depositor's wheat could be sold without keeping it or any other wheat to replace it, and in the note it is said, quoting from *Lyon v. Lenon et al.,* 106 Ind. 567, that—

"The distinction is, can the depositor by his contract compel a delivery of wheat, whether the dealer is willing or not? If he can, the transaction is a bailment. If the dealer has the option to pay for it in money or other wheat, it is a sale." (p. 572.)

Other cases more directly in point are cited to the effect that where grain is delivered to a warehouseman under an agreement that he may make such disposal of it as he sees fit, and that he shall pay the market price on the demand of the depositor, it is a contract of sale, and not of bailment, merely. The present case falls within this distinction. The effect given by the trial court to the plaintiff's testimony is that he understood when he deposited the wheat that its identity was not to be preserved, and that he left it with the association to make such disposal of it as the association saw fit, with the agreement to pay him the market price on demand.

The contention is made that the evidence does not sustain the finding that the shipping association was given the option to pay the market price on demand or to deliver the same kind and quantity of wheat. Plaintiff's own admissions show that the agreement and understanding was that his own wheat was not to be returned. He took it to the elevator and dumped it with the wheat of his neighbors and others, who

were waiting, as he was, for a price; he knew the capacity of the elevator and the usages of the business. He testifies:

"We had been hauling wheat and leaving it there till I got ready to sell it. I had wheat there all summer before, and I sold in September."

He further testifies that the wheat was put in the elevator and weighed, and that, on the day he got ready to sell, he would go in there on that test of the wheat, and settle with them for it.

"Q. Now that was the understanding you had with them? A. There was never no understanding—it was my opinion.

"Q. That is the way they had been doing it? A. Yes, sir.

"Q. And you understood this was the way this was to be done? A. I supposed it was."

We think it was a reasonable inference to be drawn from his admissions, that he understood his rights, and understood he was to be paid in cash or grain of an equal amount and quality.

The petition set up the illegal acts of the individual defendants and that they had actual notice and knowledge of the acts of Forewalder, who made unlawful speculations in options, and that they participated in these transactions. The court made findings of fact upon the questions, and found that beginning in February, 1916, the manager of the corporation began dealing in futures and options; that these transactions were carried on until they aggregated many thousands of bushels of wheat and corn and ran into many thousands of dollars; that the company sustained heavy losses thereby; and that some of the defendants, who were officers of the association, knew of these facts. The contention is made that the court should have rendered judgment against the individual defendants, because of fraud. It is insisted that when the plaintiff delivered his wheat to the association he was not aware of the unlawful transactions in which the company was engaged, and that by reason of the concealment of this from him at the time, he has now a right to recover against the individuals. In our opinion, the court properly held that it was the right of the shipping association to treat the grain as its own and to make any disposition of it which it saw fit, being responsible for the value thereof to the plaintiff. The petition as drawn stated a cause of action for conversion, with a prayer for damages. The ground upon which plaintiff sought to recover was that his wheat had been unlawfully converted by the corporation and the individual defendants. It is true that the

unlawful transactions in which the company was permitted to engage with the knowledge and consent of the other defendants were alleged; but the plaintiff took the position, and sought to establish the fact, that he remained all the time the owner of the wheat. The two remedies are inconsistent. (*Ullrich v. Bigger*, 81 Kan. 756, 106 Pac. 1073; *James v. Lane*, 103 Kan. 540, 175 Pac. 387; *Pantel v. Bower*, 104 Kan. 18, 178 Pac. 241.)

The judgment is affirmed.