No. 25,427.

J. H. Morse, *Appellant*, v. The La Crosse Milling, Grain, and Ice Company et al., *Appellees*.

SYLLABUS BY THE COURT.

1. Wheat Deposited in Elevator—*Sale Distinguished from a Bailment— Wheat Sold by Elevator Company—No Trust Fund Created.* Placing wheat in an elevator by the grower under a stipulation that "he should have the right to sell or to withdraw the said wheat, or wheat of like grade and quality," does not constitute a bailment thereof, and the money arising from a sale of the wheat by the elevator company does not constitute a trust fund in the hands of the company.

2. Same—*Election of Remedies by Grower of Wheat.* Under the circumstances described in the first paragraph of this syllabus, an action by the grower of the wheat to recover the value thereof constitutes an election of remedies if he has more than one.

3. Same—*Election of One of Two Inconsistent Remedies Bars Recovery Under the Other.* After the election of remedies described in the second paragraph of this syllabus, the grower of the wheat cannot proceed against the officers of the corporation as joint tort-feasors to recover for the wrongful conversion of the wheat.

Appeal from Rush district court, Roscoe H. Wilson, judge. Opinion filed October 11, 1924. Affirmed.

J. W. *McCormick*, of La Crosse, and D. A. *Banta*, of Great Bend, for the appellant.

*Henry F. Herrman*, of Hays City, *Frank U. Russell*, of Hutchinson, and *W. H. Russell*, of La Crosse, for the appellees.

The opinion of the court was delivered by

Marshall, J.: In this action, the plaintiff seeks to recover the market price of wheat deposited in an elevator operated by the La Crosse Milling, Grain, and Ice Company and sold by the company. The petition asked that the money received for the wheat be declared a trust fund in the hands of the company; that the claim therefor be declared a superior and paramount lien on the property and assets of the company; and that, if it be not determined the claim is a trust fund, the plaintiff be awarded a personal judgment against the members of the board of directors and the officers of the company, a corporation. Interpleas were filed by T. A. Edwards and Thomas E. Whiteman. The plaintiff filed a motion to strike the interpleas from the files. The defendants each filed a demurrer

to the petition. The motion to strike the interpleas from the files was denied, and the demurrers to the petition were sustained. An amended petition was then filed, to which the defendants McClure, Kaths, Young, and Baker, the receiver for the corporation, each filed a demurrer. Those demurrers were sustained. From the order denying the motion to strike the interpleas from the files and the orders sustaining the demurrers to the petition and to the amended petition the plaintiff appeals.

The petition and the amended petition are long. The plaintiff summarizes them in the statement in his brief. That statement is as follows:

"The La Crosse Milling, Grain, and Ice Company, was incorporated under the laws of Kansas, and authorized to do business at La Crosse, Rush County, Kansas; that the appellees, J. B. McClure, A. J. Smith, J. B. Wilson, M. J. Young, Henry F. Herman, and Caleb Philips, were the duly chosen, qualified and acting board of directors thereof, and that J. B. McClure was its president, A. J. Smith, its vice president, and F. W. Kaths, was its secretary and treasurer.

"That said corporation, thru its said officers, was engaged in the manufacture and sale of flour and other mill products; the manufacture and sale of ice, and also engaged in the purchase, sale and storage of grain in and thru an elevator owned and operated by it thru said board. All of the business of said corporation was transacted thru and under the direct management and control of said board of directors, each of whom took an active part in its affairs.

"That said board held the said corporation out to the public as a solvent and going concern, and invited the confidence of the public in the transaction of business with it, when as a matter of fact the corporation was insolvent and would have been unable to conduct its affairs but for the representations of the members of said board, by means of which the public was induced to do business with it and to place large amounts of grain and other farm products in its possession under storage agreements.

"In the month of August, 1921, the appellant, believing that said corporation was a solvent and going concern, entered into an express oral agreement with the managers of its affairs—the said board of directors, by the terms of which he placed in its elevator 2,443 bushels of No. 2 hard wheat and took its receipt therefor, the agreement being that he should have the right to sell, or to withdraw said wheat, or wheat of like grade and quality; that if he withdrew the wheat he was to pay six cents per bushel for running it through the elevator, but if he sold it, he was to pay no storage.

"Said wheat was received by said corporation thru its said officers and placed in one of its bins, and at once, without the knowledge or consent of the bailor, said wheat was shipped out and sold by said officers and the proceeds converted to the uses of said corporation. The fact of this conversion was not brought to the knowledge or known to the bailor until about the month of November, 1921, when he at once made inquiry and found that his

wheat had been sold and the proceeds converted, and when told of the fact he demanded the return to him of a like number of bushels of wheat or the market value thereof.

"At the time of the conversion of the wheat it was worth $1.38 per bushel, and of the total value of $3,371.44.

"At the time this wheat was received by said corporation, it was insolvent, but its insolvency was concealed from the appellee [the plaintiff], and when he demanded a return of his wheat or wheat of like· grade and quality, or pay for same at the then market value, the corporation was still insolvent and unable to meet its obligations. But afterwards and on the 10th day of February, 1922, it paid him the sum of $500.00.

"Afterwards, for the purpose of having the value of said wheat fixed, he sued the said corporation and recovered a judgment against it for $2,871.34 but at said time the said corporation was still insolvent and was in the hands of a receiver and unable to pay the judgment, and the same has never been satisfied in whole or in part.

"Afterwards and in the month of April, 1922, the appellee [plaintiff], obtained leave of court to sue said corporation and its receiver, and the defendants above named, to wit, the members of the board of directors, and filed his suit against them praying judgment in the alternative, first that the amount due for said wheat be declared a trust fund and made a lien upon the property of the corporation, or second that he have judgment against the individual members of the board of directors for the fraudulent conversion of his wheat."

1. Attention is called to an allegation of the petition as set out in the statement of the plaintiff, "that he should have the right to sell, or to withdraw said wheat, or wheat of like grade and quality." In *Scott v. Shultz,* 67 Kan. 605, 73 Pac. 903, the first paragraph of the syllabus reads:

"Where personal property is delivered by the owner to another for use and the identical thing delivered is to be returned, the transaction is a bailment and there is no transfer of title; but if it is stipulated that the one to whom it is delivered may return another thing of the same kind, or an equivalent in value, or otherwise, it will ordinarily constitute a sale and effect a change of title."

We quote from *Bonnett v. Shipping Association,* 105 Kan. 121, 123, 181 Pac. 634, as follows:

"The court held, and we think properly, that the case falls within the rule declared in *Barnes Bros. v. McCrea & Co.,* 75 Iowa 267. There it was held that where grain is delivered to an elevator owner under an alleged oral agreement that the latter was to have the grain on paying the highest market price, or in case he did not buy, to receive pay for weighing, but not for storage, it being known to the party who delivered the grain that it was indiscriminately mixed in a mass with other grain from which the elevator owner was accustomed to ship when prices suited him, the transaction is a sale and not a bailment."

The same general rule was stated in *Scott v. Shultz*, 67 Kan. 605, 607, 73 Pac. 903, where it was said:

"If the identical thing delivered is to be returned, it is a bailment, and there is no transfer of title; but if the one to whom it is delivered may return another thing of the same kind, or an equivalent in the form of money, or otherwise, it will ordinarily constitute a sale and effect a change of title."

In the Bonnett case, the court quoted from 3 R. C. L. 76 as follows:

" 'Where, however, grain is delivered to a warehouseman, who mixes it with that of others, under an express contract, or a contract implied from the usual course of business, that when the depositor chooses to call for it the warehouseman will pay the highest market price or return the same amount of grain of like quality, the transaction will not be deemed a bailment, but a sale with an option on the part of the purchaser to pay either in money or property as stipulated.' "  (p. 124.)

The court also quoted the following from Dobie on Bailments and Carriers:

" 'But when the obligation imposed on the elevator keeper by the receipt of the grain is merely to return grain of a certain quantity and quality, then the transaction cannot be a bailment. The same is true when the keeper has the right to use any and all of the grain on payment therefor, either in money or other grain, without any duty of substitution of other grain therefor in the elevator; and also when the keeper has the option whether he shall return the grain delivered or pay for the grain. In all of these cases, the keeper could destroy the grain when received without impairing the legal rights of the depositor, and this is here inconsistent with the legal notion of a bailment.' (p. 9.)"  (p. 124.)

Under these authorities, the transaction was a sale and not a bailment, and the money arising from the sale of the wheat was not a trust fund in the hands of the grain company.

2. Attention is directed to the allegations of the petition concerning the judgment that had been procured against the corporation. The judgment was for the value of the wheat. If the wheat had constituted a bailment, there was a conversion and the plaintiff could elect to treat it as a sale and recover the value of the wheat. He recovered judgment for the value of the wheat. The action constituted an election to treat the transaction as a sale. In *Smith v. McCarthy*, 39 Kan. 308, 18 Pac. 204, the court said:

"Where a person takes and sells the property of another, the owner may elect to waive the tort and sue upon the implied contract for the value of the same; and whether he has so elected, and the nature of the action brought, are to be determined by the court from the pleadings."  (Syl. ¶ 1.)

That rule was followed in *Altman v. Bank*, 86 Kan. 930, 122 Pac. 874, where the court declared that—

"An owner whose property has been converted to the use of another may waive the tort and bring his action on the implied contract for the value of the property taken, and the averments of the petition herein are held to indicate a waiver of the tort by the plaintiffs." (Syl. ¶ 1.)

3. The plaintiff, having elected to treat the transaction as a sale of the wheat, is bound thereby and cannot now proceed against the directors and officers of the corporation as joint tort-feasors. This rule was followed in *Ireland v. Waymire*, 107 Kan. 384, 191 Pac. 304, where the court in the first paragraph of the syllabus said:

"Where property is wrongfully obtained from the owner by another and converted to his own use, the former owner has two remedies open to him, one to treat the title as having passed and sue for its value, and the other to sue for the recovery of the specific property, and when, with knowledge of the facts, he sues for the value of the property converted, the election is complete, and the other remedy is no longer available to him."

In the opinion in that case, the court declared that—

"It has been consistently held throughout a long line of decisions in this state, that where a party having the right to choose one of two inconsistent remedies, deliberately elects to follow one of them with knowledge or the means of knowledge of the facts, he is effectually barred from thereafter making a new election and pursuing the other remedy." (p. 386.)

The plaintiff cites *Sweet v. Bank*, 69 Kan. 641, 77 Pac. 538, in which the court, in the syllabus, said:

"Where the remedies afforded are inconsistent, an election of one of them with a full knowledge of the important facts, operates as a bar to the adoption of another.

"Where money has been wrongfully converted to the use of a corporation, and the assets of the corporation by insolvency have come into the hands of a receiver, a proceeding to reclaim such money from the receiver is not a bar to an action in conversion against the parties by whose wrongful acts the funds were misappropriated, the two remedies not being inconsistent."

. The court used the following language in the opinion in that case:

"The doctrine of the election of remedies has been frequently applied by this court. The cases hold that where the remedies afforded are inconsistent the election of one by a party, with full knowledge of the important facts affecting his right, operates as a bar to the adoption of another of such remedies. (*Remington v. Hudson*, 64 Kan. 43, 67 Pac. 636; *Railway Co. v. Henrie*, 63 id. 330, 65 Pac. 665; *Bank v. Haskell County*, 61 id. 785, 60 Pac. 1062; *City of Larned v. Jordan*, 55 id. 124, 39 Pac. 1030; *Plow Co. v. Rodgers*, 53 id. 743, 37 Pac. 111.) Election goes not to the form but to the essence of the remedy. It applies only where the law supplies to a party two or more modes

of procedure, predicated upon inconsistent and conflicting theories. If the remedies afforded be predicated upon consistent theories, the suitor may use one or all of them; there can be but one satisfaction. Where the remedies afforded are inconsistent, the election of one operates as a bar." (p. 643.)

There, the first action was one to reclaim trust money from the receiver. That action failed. Afterward, the plaintiff proceeded against the parties who wrongfully appropriated the money. Here, the wheat placed in the elevator did not constitute a bailment. That wheat was not necessarily to be returned to the plaintiff. That or other wheat could be returned if the wheat deposited had not been sold. Any wheat of the same grade and quality would satisfy the claim of the plaintiff. There was no conversion of the identical wheat belonging to the plaintiffs. For that reason, *Sweet v. Bank,* supra, does not control in the present case.

This renders it unnecessary to determine whether or not there was error in denying the motion to strike the interpleas from the files.

The judgment is affirmed.