Zuber v. Minshall.

---

No. 27,121.

JOE ZUBER, *Appellee*, v. JESSIE MINSHALL, as Administratrix, etc., *Appellant*.

SYLLABUS BY THE COURT.

BAILMENTS—*What Constitutes—Deposit of Grain in Elevator*. Where grain is placed in an elevator but not specifically sold at the time of its deposit therein, the depositor retaining the right to elect to demand the return of the grain deposited or the delivery of other grain of like grade, the transaction constitutes a bailment.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed June 11, 1927. Affirmed.

*E. C. Wilcox, Myrtle Youngberg* and *J. Howard Wilcox*, all of Anthony, for the appellant.

*Donald Muir, Harry B. Davis, Vernon Day* and *Guy O. Neal*, all of Anthony, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This action was commenced in the probate court. The plaintiff sought to have the defendant Jessie Minshall, as administratrix of the estate of A. B. Minshall, deceased, deliver to the plaintiff a quantity of kafir corn. The kafir corn was sold under

Bailments, 6 C. J. p. 1097 n. 94; L. R. A. 1918F, 147; 3 R. C. L. 75.

the order of the probate court, and the proceeds arising from the sale are in the hands of the administratrix. The plaintiff prevailed in the probate court and the administratrix appealed to the district court. There the plaintiff again prevailed, and the administratrix has appealed to the supreme court.

The cause was tried without a jury, and special findings of fact were made. They were as follows:

"1. That on the 13th day of February, 1925, A. B. Minshall died and at the time of his death he owned and operated a grain elevator at Ruella, in Harper county, Kansas.

"2. That on the 10th, 14th and 15th days of January, 1925, the claimant, Joe Zuber, hauled and delivered to the elevator of the said A. B. Minshall, 1,268 bushels and 42 pounds of mixed kafir corn, principally white kafir corn.

"3. That at the time that the said Joe Zuber delivered said kafir corn to said elevator he did not sell the same and that he has not received payment therefor, except the quantity of one hundred bushels for which he has received payment.

"4. That at the time of the delivery of said kafir corn by the said Joe Zuber to said elevator the said A. B. Minshall stated that he had not purchased said kafir corn from the said Joe Zuber.

"5. That no specific arrangement was made between the said Joe Zuber and the said A. B. Minshall as to the care and custody of said kafir corn.

"6. That when said kafir corn was delivered to said elevator it was mixed with other kafir corn of similar class in the elevator of said Minshall.

"7. That after the death of said A. B. Minshall, by order of the probate court his personal representative shipped out said kafir corn to market and sold 891 bushels and 40 pounds of kafir corn and received the sum of $726.24 net therefor.

"8. That in handling kafir corn at said elevator it was the purpose of the said A. B. Minshall at all times to keep on hand in his elevator a quantity of kafir corn sufficient to equal the quantity of kafir corn that he received into his elevator and which he had not purchased.

"9. That the purpose and reason of the said claimant, Joe Zuber, in placing his kafir corn in the elevator at the time and place in question were that he was then threshing his kafir corn out of the stack and some of it was damp and he had no bins of his own in which to store the same.

"10. That the quantity of kafir corn delivered by the claimant to said elevator exclusive of the one hundred bushels which he sold would make about one car load.

"11. That the said claimant gave the said A. B. Minshall at the times referred to no option to pay the market price for said kafir corn on demand or to deliver the same kind and quantity of kafir corn, but the said claimant retained the right whether to elect to demand the return of said kafir corn or other kafir corn of like grade.

"12. That at the times in question the said A. B. Minshall had but one bin in his elevator in which to store kafir corn and it was his custom to com-

Zuber v. Minshall.

mingle kafir corn received by him with like quality belonging to him and from such mass to ship out and sell from time to time and replenish with such other grain as was brought to him for storage or for sale.

"13. That after the delivery of the kafir corn in question to the said A. B. Minshall and prior to his death he shipped out one carload of kafir corn consisting of about sixty thousand pounds taken from the bin in which claimant's kafir corn was stored.

"14. That at the times in question it was a common practice, although not a custom for the said A. B. Minshall to receive grain in his elevator, issue scale tickets for the weight and grade of same to the owner and store the same in his elevator and later pay for such grain at the market price existing at the time that such tickets were presented to him by the holder thereof for settlement and payment of the grain represented by such tickets.

"15. That kafir corn and milo maize are similar kinds of grain and frequently commingled without changing the quality or grade of either.

"Conclusions of Law.

"1. That the transaction had between the said claimant, Joe Zuber, and the said A. B. Minshall, now deceased, with reference to the kafir corn in question was a bailment and not a sale.

"2. That the claimant is entitled to receive from the estate of A. B. Minshall the net proceeds of the kafir corn sold by order of the probate court in the above sum of $726.24."

We quote from the brief of the defendant as follows:

"The only question of importance raised in this appeal is whether or not the transaction involved was a sale or bailment."

The defendant cites *Scott v. Shultz,* 67 Kan. 605, 73 Pac. 903, *Bonnett v. Shipping Association,* 105 Kan. 121, 181 Pac. 634, and *Morse v. Grain & Ice Co.,* 116 Kan. 697, 229 Pac. 366. These cases have been examined. They do not control in the present action because the facts here are different from the facts disclosed in those cases. Here there was no arrangement, contract or understanding by which A. B. Minshall might do anything other than return kafir corn.

In 6 C. J. 1097 it is said:

"Where grain is deposited in an elevator or in a warehouse on an understanding, express or implied, that the warehouseman may mix it with other grain of like quality, and shall return to the depositor the amount of his deposit out of the mass which is to be kept good to that extent, the various owners of the grain are tenants in common, and the transaction is a bailment."

The findings show that the transaction between the plaintiff and Minshall came within the rule found in 6 C. J. 1097.

The judgment is affirmed.