## KEYSTONE PIPE & SUPPLY CO. OF TEXAS v. HERBERT OIL CORPORATION.

### No. 12858.

Court of Civil Appeals of Texas. Fort Worth.

June 10, 1933.

Slay & Simon, of Fort Worth, for appellant.

Levy & Evans, of Fort Worth, for appellee.

DUNKLIN, Justice.

On October 29, 1926, the Herbert Oil Corporation and James B. Douglas entered into a written contract in which the oil company was designated party of the first part and James B. Douglas as party of the sec-ond part, and it contained the following stipulations:

"The Party of the first part hereby agrees to loan to the party of the second part, 905' 40#—10" casing; 1400'—32# ¼" casing and 1660'—24#—6⅝" casing, together with the necessary shoes and clamps for the purpose of drilling a well for the production of oil and gas, said well to be located in the Southwest corner of Block 10, of the Sub-division of the Andrew Gable Survey, Coleman County, Texas; said casing, shoes and clamps to be transported from the place where the same now are located to the above described location at the sole cost and expense of the party of the first part and such casing is not to be used for any other purpose or at any other place, save and except as herein stated.

"II. In consideration of the loan of said casing as aforesaid, the party of the second part hereby agrees to assign or cause to be assigned to the party of the first part a valid and subsisting oil and gas lease in usual form covering Block 15, of the sub-division of the Andrew Gable Survey, located in Coleman County, Texas, and containing forty (40) acres of land and said Party of the Second Part agrees to drill and complete said well in a good· and workmanlike manner and with due diligence, after the same is spudded in, to a depth of 2,000 feet, unless oil or gas is found in paying quantities at a lesser depth; said well to be spudded in within five (5) days after the party of the first part has approved the titles to the lands above described, as hereinafter provided.

"III. In addition to the consideration aforesaid for the use of said casing, the party of the second part hereby gives and grants to the party of the first part the right and option ·to acquire and purchase a one-sixteenth (1/16th) of the seven-eighths (7/8ths) working interest in the well above referred to, and in the event the same is a producer of oil or gas in paying quantities, for a consideration of $10.00;· such right and option to be exercised by the party of the first part if and· when said well is determined to be a producer of oil or gas in paying quantities.

"IV. It is further agreed by and between the parties hereto that in the event said well when completed is a dry hole, then the party of the second part hereby agrees, binds and obligates himself to pull all casing used therein and rack the same in good condition on the land adjacent to said well, and in case any of said casing is left in the hole, or is not re-delivered or is materially damaged by the party of the second part, said party of the second part agrees to pay to the party of the first part at Fort Worth, Texas, for any such casing that is not so redeliv-

ered, left in the hole, or materially damaged, the cost price of said casing.

"V. In the event said well when completed is a producer of oil or gas in paying quantities, then the party of the second part hereby agrees to pull all casing from said hole except the production string and deliver the same as hereinbefore provided and to pay for such as is not redelivered as hereinbefore provided and for such production string as may be left in the hole, the party of the second part agrees, binds and obligates himself to pay therefor 15/16ths of the cost price thereof to the party of the first part at Fort Worth, Texas, upon the completion of said well; the party of the first part to own a 1/16th interest in such production string in the event of production. In the event said well when drilled is a producer of oil or gas in paying quantities and if the party of the first part shall not exercise its right to purchase a 1/16th interest therein as hereinbefore provided, then and in such event, the party of the second part hereby agrees, binds and obligates himself to pay for the whole production string left in the well the cost price thereof to the party of the first part at Fort Worth, Texas."

The record shows without controversy that Douglas carried the casing to Jones county without the knowledge or consent of the Herbert Oil Corporation; and, after using it in a well which he there drilled, he pulled it from the hole and laid it out on the ground nearby. The Herbert Oil Corporation, after diligent effort to locate the casing, found it and removed and appropriated it. Prior to such removal, and after the casing had been taken to Jones county by Douglas, he, on November 19, 1927, executed to the Keystone Pipe & Supply Company a chattel mortgage on said casing to secure a promissory note in the sum of $3,853.92 of even date with the chattel mortgage, and that mortgage was duly recorded in Jones county. The contract which Douglas had made with the Herbert Oil Corporation was never filed for record in any county, and the Keystone Pipe & Supply Company was never apprised of it prior to the taking of its chattel mortgage.

The Keystone Pipe & Supply Company instituted this suit against the Herbert Oil Corporation for damages in the sum of $1,000 for conversion of the casing which was covered by its chattel mortgage.

The case was tried before the court without a jury, and upon findings of fact and conclusions of law filed by the trial judge judgment was rendered denying the plaintiff any relief, and from that judgment it has prosecuted this appeal.

The findings and conclusions of the trial court are as follows:

"Findings of Fact.

"On the 29th day of Oct. 1926, the defendant Herbert Oil Company of Texas furnished to one James B. Douglas 600 feet of 10 inch casing, among other casing, under the terms of that certain written contract introduced in evidence as 'Exhibit A.'

"This casing was used by the said James B. Douglas in the drilling of wells in Coleman County, under the terms of the contract referred to above.

"The defendant Herbert Oil Company of Texas received the lease mentioned in said contract in accordance with the terms thereof.

"James B. Douglas, without the consent of the defendant Herbert Oil Company of Texas, moved said casing into Jones County and used it in the well of the Douglas Oil Corporation known as the Smith Well.

"The Herbert Oil Company of Texas tried to locate said casing and failing to do so sent James B. Douglas several bills for same.

"During the latter part of June or in July of 1928, the Herbert Oil Company of Texas located said casing in the Smith Well in Jones County, and that it took into its possession said casing and removed same from Jones County and that it has retained same since then.

"The reasonable market value of the casing so removed by the defendant Herbert Oil Company of Texas at the time and place of removal was $900.00.

"On the 19th of November, 1927, the Douglas Oil Corporation and James B. Douglas had executed to the plaintiff Keystone Pipe & Supply Company of Texas, a chattel mortgage upon the above described casing, among other casing, as security for the payment of the purchase price of oil well equipment which was then being furnished to the Douglas Oil Corporation and James B. Douglas.

"Said chattel mortgage was filed for registration in Jones County on the 14th day of January, 1928.

"The contract between the defendant Herbert Oil Company of Texas and James B. Douglas introduced as Exhibit A was never filed for registration as a chattel mortgage either in Coleman County or in Jones County or in any other county in Texas.

"Conclusions of Law.

"I conclude as a matter of law that title never passed from the Herbert Oil Company of Texas to James B. Douglas or the Douglas Oil Corporation as to the 600 feet of 10 inch casing involved, and that the Herbert Oil Company of Texas was always the owner of said casing.

"I conclude as a matter of law that the contract between the Herbert Oil Company

of Texas and Douglas introduced as Exhibit A was neither a conditional sale, chattel mortgage nor a purchase.

"[Signed]     F. P. Culver, Jr., Judge."

Error has been assigned to the conclusions reached by the trial court that the contract between the Herbert Oil Corporation and Douglas was neither a conditional sale, chattel mortgage, nor a purchase. Appellant concedes that, if the contract evidenced a contract of bailment only, then there was no error in the conclusion reached by the trial court, but it is insisted that the contract was one of a conditional sale, which, under the statutes, constituted a chattel mortgage, and that appellant's rights as a creditor and holding a chattel mortgage on the property acquired in good faith and without notice of the contract, judgment should have been in its favor.

Following are the two articles of the statute relied on:

Article 5489: "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. * * * *"

Article 5490: "Every chattel mortgage, deed of trust, or other instrument of writing, intended to operate as a mortgage, or lien upon personal property, and every transfer thereof which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged, pledged, or affected by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making same, as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if. the mortgagor or person making the same be a resident of this State, then, of the county of which he shall at that time be a resident. * * * *"

■ We quote the following from 3 R. C. L. p. 73, § 3: "As to what is a bailment there appears to be no conflict of authorities. They all seem to agree in holding that when the identical article is to be redelivered in the same or in altered form, the contract is one of bailment, and the title to the property is not changed. But when there is no obligation to return the specific article and the bailee is at liberty to return another of equal value the transaction becomes a sale and the title to the property is changed."

That distinction between a conditional sale and a bailment is embodied in other authorities such as Knittel v. Cushing, 57 Tex. 354, 44 Am. Rep. 598; Willys-Overland Co. v. Chapman (Tex. Civ. App.) 206 S. W. 978; Union Stock-Yards & Transit Co. v. Western Land & Cattle Co. (C. C. A.) 59 F. 49, and other decisions noted in 17 A. L. R. page 1434.

■■ Testimony of John W. Herbert, president of the Herbert Oil Company, to the effect that, after he was unable to locate the casing, he had his bookkeeper mail to Douglas a demand for payment for the casing that had been furnished under the contract, is referred to by appellant as indicating that the contract was one of conditional sale. We do not believe that such evidence would be controlling, since such a demand under such circumstances was not inconsistent with the theory that the contract was one of bailment, since, even under bailment, the bailee and any one who has acquired possession through a wrongful act of the bailee will be liable in damages to the bailor for the value of the property which has not been returned. 6 C. J. pp. 1147 and 1149, §§ 109, 110, and 111. In the same volume, on page 1139, it is pointed out that it is the duty of the bailee to return the property to the bailor when the contract of bailment is terminated, and in that connection it is said: "It is not essential in the creation of the duty to re-deliver that the return of the goods be stipulated for in the contract, but the duty arises by implication of law from the very nature of the transaction."

■ It is to be noted further that the contract bound Douglas in the first instance to pull all casing used in the well and rack the same on land adjacent to the well, and that he was to pay for the value of casing in the event only that it was left in the well and not redelivered or materially damaged by Douglas.

We have reached the conclusion that the contract was one of bailment only, and accordingly adopt the trial court's findings of fact and conclusions of law, and affirm the judgment from which the appeal has been prosecuted.