## STRICKLIN v. RICE et al.

### No. 5161.

Court of Civil Appeals of Texas. Amarillo.

June 10, 1940.

G. E. Lockhart and W. R. Porter, both of Lubbock, for appellant.

Crenshaw, Dupree & Milam, of Lubbock, for appellees.

JACKSON, Chief Justice.

The record shows that in February, 1935, Manion Rice purchased from S. E. Cone a grain elevator located at Anton in Hockley County, Texas, which he operated under the trade name of Manion Rice Elevator Company. He engaged in the business of buying, selling and storing grain, wheat, sudan seed, etc. He was bonded and conducted his storage business as a public warehouseman and used his elevator as a warehouse, the capacity of which was about 6,000 bushels of grain. Wheat, grain and seed bought or stored were not kept separate from the grain and seed of other depositors but by custom or agreement, either express or implied, such articles were mingled with other grain or seed of the same kind and grade. The various depositors and Rice owned the entire mass in the storehouse in common and Rice and each depositor was entitled to such portion of the whole as the amount deposited by him bore to the entire mass. When sales were made the seed or grain sold or shipped was taken from the mingled mass of the same kind and grade found in the warehouse.

H. H. Stricklin delivered to Mr. Rice at his elevator in Anton 43,740 pounds of sudan grass seed on the terms and con-

ditions contained in the following instrument dated February 15, 1936.

"S. E. CONE GRAIN AND SEED COMPANY
Lubbock, Texas

Terms Contract        Storage Sudan
Grain Account with H H Stricklin    February 15, 1936
Morton,   Box 838.

Kind of grain        Ticket No.        Weight
Sudan"

(Then follows the ticket number and weight of each load delivered, the aggregate amount of which is 43,740 pounds, after which the instrument continues:)

"Bonded Warehouse
1. Advance 75¢     $328.05
2. Customer agrees to take Government Terminal Elevator Shrinkage.
3. Customer reserves the right to get Sudan Seed out of storage at time he is ready to sell provided Elevator can not pay as high as he is offered by other grain dealers.
4. Elevator reserves the right to buy above Sudan provided he can pay as much as other Grain Dealers.
5. Elevator reserves the right to charge 5¢ per hundred for loading out charges provided he does not buy above Sudan.
6. Storage rate, 2½¢ cwt. per month.

Manion Rice Elevator Co.
Hoyt Rice
Customer: H. H. Stricklin

Sudan        5265        5430
             5276        4690
                        _____
                        10120
Storage starting June 16th 17th 1936."

On June 16th and 17th Mr. Stricklin delivered the additional 10,120 pounds of seed on the same contract which together amounted to 53,860 pounds. Rice shipped the 43,740 pounds to Lubbock about February 24, 1936, and stored it with S. E. Cone who operated a grain elevator in Lubbock and was engaged in buying, selling and storing grain under the trade name of S. E. Cone Grain and Seed Company. In December Rice shipped the additional 10,120 pounds to Mr. Cone in Lubbock and stored it in his elevator. Rice claimed to own this sudan seed and so informed Mr. Cone who advanced the sum of $500 thereon. This 53,860 pounds of seed and the $500 advanced thereon were included in a total of 194,000 pounds stored by Mr. Rice with Mr. Cone in 1936 and the $500 was included in the sum of $5,866.46, the sum advanced on the whole amount of seed stored with Cone by Rice. It was understood that should the market price of the seed decline sufficiently to consume the interest or equity of Rice, the depositor, in the seed he should margin the seed or the warehouseman was authorized to close out the seed on the market to protect himself against loss.

The Anton State Bank early in 1936 sued Manion Rice on indebtedness due it by him and had a writ of garnishment issued and served on Mr. Cone who informed the bank the amount of seed Rice had stored with him, the money advanced thereon, the storage charges against the seed, his right to close out if the price declined sufficiently to consume the interest of Rice in the seed. Cone gave the bank the choice of paying the money due him for such advance and storage or to put up money to margin the seed against loss on a declining market. The bank put up a margin to protect 100,000 pounds of the seed and Mr. Cone carried the contract until in March, 1937, when the market price declined to a point where the equity of Rice was consumed, no further margin was put up and appellee Cone closed out the seed stored by Rice with him, and in such transactions lost the sum of $17.

Mr. Stricklin knew when he delivered the seed that Manion Rice had but a small elevator, was engaged in buying, selling and storing grain, and that he shipped grain out from time to time. He understood that if the market declined sufficiently he would be required to put up a margin to protect his seed and if he failed to do so Rice would be authorized to close it out.

H. H. Stricklin, the appellant, instituted this suit in the District Court of Lubbock County on January 20, 1939, against Manion Rice and S. E. Cone, the appellee, to recover the market price of his seed which he alleges they converted and appropriated to their own use and benefit. He pleads the storage of the seed with Rice, the contract or receipt issued to him therefor, and contends that the transaction was a bailment, that Rice and appellee acted jointly in the conversion, that he demanded the seed, which they refused to deliver, and asserts his right to recover the sum of $1,274.86, the market value of the seed at the time of conversion.

Manion Rice answered by general demurrer and general denial.

Appellee Cone answered by general demurrer, general denial, pleaded the two years' statute of limitation, that the sudan seed was sold by Stricklin to Manion Rice who represented that he was the owner of the seed, asserts that the contract or receipt constituted a sale and not a bailment, that Rice was authorized to sell thereunder and that he acquired the seed

for value without notice of the appellant's claim.

We deem it unnecessary to make a more detailed statement of the allegations in the appellant's petition or the appellee's answer since many of the facts alleged were abandoned and are immaterial to a review of this case.

On special issues submitted by the court the jury found, in effect, that the sudan shipped by Rice to Cone was of the reasonable market value of 3¢ per pound and that the market value of such seed was the same on March 3, 1937. In response to a peremptory instruction the jury found against appellant H. H. Stricklin and in favor of appellee S. E. Cone. On these findings the court rendered a judgment in favor of H. H. Stricklin against Manion Rice for the sum of $1,270.77 and that appellant take nothing against appellee S. E. Cone, who was decreed to go hence with his costs. The appellant prosecutes this appeal from the action of the court in directing a verdict against him in favor of S. E. Cone and rendering judgment thereon.

The appellant urges as error the action of the trial court in directing a verdict for the appellee S. E. Cone because the evidence shows that the contract between appellant and Manion Rice was a bailment and not a sale.

The record reveals, and this apparently is conceded, that it was contemplated that the sudan seed of appellant would not be stored by itself in a separate bin but would be mingled with other seed of the same kind and grade.

We are cited to no decision by the Texas courts and in our investigation we have found none in which the precise question of whether a contract such as was made by appellant and Rice constitutes a bailment or a sale. However, the law in Texas seems to be that when there exists no obligation to return the specific article and the bailee is authorized to return another article equally valuable the transaction is a sale and not a bailment. Keystone Pipe & Supply Co. of Texas v. Herbert Oil Corporation, Tex.Civ.App., 62 S.W.2d 606. The contract, among other things, expressly provides that the appellant may "get sudan out of storage" when he is ready to sell, provided Manion Rice will not pay him as high a price as other grain dealers, which manifestly means if Rice refuses to pay the market price and Rice reserves the right to purchase the seed if he will pay as much as the other grain dealers, meaning obviously if he will pay the market price.

This is clearly a contract giving Manion Rice the option either to deliver the quantity and quality of seed deposited in the elevator by appellant or pay him the market price therefor.

The law distinguishes between a contract giving the depositor an option to demand the grain or to sell to the warehouseman and anyone he chooses and a contract giving the warehouseman an option.

In 6 Am.Jur. 181, para. 52, the author says: "Where grain is delivered to a warehouseman, who mixes it with that of others, under an express contract, or a contract implied from the usual course of business, that when the depositor chooses to call for it the warehouseman will have the option to pay the highest market price or return an equal amount of grain of like quality, the general rule is that the transaction will not be deemed a bailment, but rather, a sale with an option on the part of the purchaser to pay either in money or in property as stipulated."

In Burke v. Boulder Milling & Elevator Co., 77 Colo. 230, 235 P. 574, 575, the Supreme Court of Colorado says:

"If the option to pay for grain at the market price or return the grain is with the warehouseman, the transaction is a sale. 3 R.C.L. p. 75, § 6; Savage v. Salem Mills Co., 48 Or. 1, 85 P. 69, 10 Ann.Cas. 1065; Cloke v. Shafroth, 137 Ill. 393, 27 N.E. 702, 31 Am.St.Rep. 375; Barnes v. McCrea, 75 Iowa 267, 39 N.W. 392, 9 Am. St.Rep. 473; Bonnett v. Farmers' & Growers' S. Ass'n, 105 Kan. 121, 181 P. 634; Finch v. McClellan, 77 Ind.App. 533, 130 N.E. 13, 131 N.E. 236.

"In each of these, and in practically every authority brought to our attention, the contract was for 'market price' or 'current price' or 'highest market price.' Whatever the language, the price is always definite or capable of being made definite. It is such a price, payable at the option of the dealer, which fixes upon the transaction the character of a sale."

See, also, Summers v. Peoples Elevator Co., Mo.App., 136 S.W.2d 81; Potter v. Mt. Vernon Roller Mill Co., 101 Mo.App. 581, 73 S.W. 1005; Henderson Grain Co. et al. v. Russ et al., 122 Tex. 620, 64 S. W.2d 347.

In our opinion, the written agreement gave Manion Rice the option to return sudan seed of the same class or to pay the highest market price therefor and constituted a sale and not a bailment and therefore Rice was authorized to handle the seed as his own and appellee S. E. Cone was not responsible to appellant for the seed nor the market price thereof.

The appellant assigns as error the action of the court in excluding the testimony of Manion Rice and appellant as to their intention in entering into the written contract when the seed was deposited in the elevator. This instrument is not ambiguous, defines the rights and liabilities of each of the parties thereto, no fraud, accident or mistake is alleged, and parol testimony as to the intention of the parties was not admissible under this record.

The judgment is affirmed.